UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUKHWINDER KAUR, individually and as the successor in interest for the Decedent PARMINDER SINGH SHERGILL; KULBINDER KAUR SOHOTA; SARABJIT SINGH SHERGILL,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LODI; CITY OF LODI POLICE DEPARTMENT; MARK HELMS, in his individual capacity as the Chief of Police for the City of Lodi; SCOTT BRATTON, in his individual capacity as a City of Lodi Police Officer; ADAM LOCKIE, in his individual capacity as a City of Lodi Police Officer; and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 2:14-cv-828-GEB-AC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE CITY DEFENDANTS' MOTION TO DISMISS AND DENYING THE OFFICER DEFENDANTS' MOTION TO DISMISS** |

Defendants City of Lodi, City of Lodi Police Department, and Chief of Police Mark Helms (collectively, "the City Defendants"), and Scott Bratton and Adam Lockie (collectively, "the Officer Defendants") move in two separate motions under Federal Rule of Civil Procedure ("Rule") 12(b)(6)

1

for dismissal of certain claims in Plaintiffs'[1] Complaint, and dismissal of certain parties from the action. The motions challenge claims alleged under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), and California Government Code sections 815.2 and 820. Plaintiffs oppose the motions.

### I. LEGAL STANDARD

When deciding a motion to dismiss a complaint, a court "inquire[s] whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation omitted) (internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to

---

[1] Plaintiffs Sukhwinder Kaur ("Ms. Kaur"), Kulbinder Kaur Sohota ("Ms. Sohota"), and Sarabjit Singh Shergill ("Mr. Shergill") jointly allege the sixth claim in the Complaint, and Ms. Kaur alone alleges all other claims. Each Plaintiff is referenced as "Plaintiffs" throughout the order.

defeat a motion to dismiss." Id. (citation omitted) (internal quotation marks omitted); see also Iqbal, 556 U.S. at 678 (stating "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'" (quoting Twombly, 550 U.S. at 555)).

## II. FACTUAL BACKGROUND

The following allegations in the Complaint are germane to the motions. "[Lodi Police Department] Chief H[elms] is responsible for [the Lodi Police Department]'s policies related to use of force and its officers' contacts with persons suffering from mental illness-related disabilities." (Compl. ¶ 43, ECF No. 1.) "Chief H[elms] failed to implement and/or to maintain an adequate [Lodi Police Department] policy related to officer contacts with individuals suffering from mental illness-related disabilit[ies] and the use of force on these individuals. Chief H[elms] was either aware of the non-existence or inadequacy of a policy, believing, mistakenly, that it was not necessary or was deliberately indifferent to the non-existence of, or inadequacy of, this type of important policy." (Id. ¶ 44.)

"P[arminder Singh Shergill] [('Parminder')] was a[] . . . disabled Gulf War veteran who suffered [from] post-traumatic stress disorder and depression . . . ." (Id. 2:1-2.) "P[arminder] was a qualified individual with a disability under Title II of [the] ADA, and was suffering from a mental illness-related disability at the time of the incident giving rise to this action." (Id. ¶ 66.)

"[Ms. Kaur] is the mother of . . . P[arminder], and possesses a liberty interest in her familial relationship with

3

[him]." (Id. ¶ 72.) "[Ms. Kaur] and [Parminder's siblings] [Ms. Sohota] and [Mr. Shergill] . . . share[d] an intimate human relationship with their son/brother P[arminder] . . . ." (Id. ¶ 76.)

"On the morning of January 25, 2014, P[arminder] became anxious and his family members wanted him to go to the Veteran's Clinic to receive treatment." (Id. 2:4-5.) "P[arminder]'s sister-in-law[] called 9-1-1 to request assistance in transporting P[arminder] to the Veteran's Clinic." (Id. ¶ 18.) "During the telephone call to 9-1-1, [she] explained that P[arminder] was disabled, manifesting symptoms of mental illness, and needed to be transported to the Veteran's Clinic where he could obtain care and treatment for his disability." (Id. ¶ 19.)

"Before [the Officer Defendants] arrived, P[arminder] left the [f]amily [h]ome to walk to the [p]ark." (Id. ¶ 21.) At the home, Parminder's sister-in-law "provided [the Officer Defendants] with the same information she had provided to the dispatcher." (Id. ¶ 23.) The Officer Defendants "told the family that there was nothing they could do because P[arminder] was not home and had not threated violence to himself or others." (Id. ¶ 24.) The Officer Defendants "told [Parminder's sister-in-law] that if they saw P[arminder] they would try to talk to him"; they then "left the [f]amily [h]ome." (Id. ¶ 25.)

The Officer Defendants "saw P[arminder] while he was walking through the [p]ark and attempted to detain him." (Id. ¶ 26.) "P[arminder] walked past the officers . . . and began to walk . . . toward his [f]amily [h]ome." (Id. ¶ 28.) The Officer Defendants "pursued P[arminder] with their weapons drawn,

4

following closely behind him, and demanding that he stop and submit to their questioning . . . ." (Id. ¶ 29.) "As [the Officer Defendants] followed P[arminder] . . . , [they] repeatedly asked [P]arminder questions and demanded that he stop and answer their questions." (Id.) "P[arminder] suffered extreme and severe emotional distress at the hands of [the Officer Defendants'] harassing behavior . . . ." (Id. ¶ 91.)

"When P[arminder] was a few house-lengths away from the driveway of his [f]amily [h]ome, [the Officer Defendants] yelled at P[arminder] to 'Stop!' P[arminder] responded to [their] commands by turning around to face them." (Id. ¶ 30.) "P[arminder] had his hands up and yelled 'Don't shoot!'" (Id. ¶ 31.) The Officer Defendants "then shot and killed P[arminder] . . . ." (Id. ¶ 32.)

"Later that same day, through Chief of Police H[elms], the [Lodi Police Department] issued a press statement regarding the shooting and P[arminder]'s subsequent death," which stated, inter alia: "During their contact [Parminder] charged the [Officer Defendants] with [a] knife, and officers were forced to shoot him. . . . Because of the suspect's actions, our officers had no choice and they had to shoot him." (Id. ¶ 39.) Plaintiffs allege that "[t]he above-referenced statements [in the press release] are false." (Id. ¶ 40.)

### III. DISCUSSION

#### A. The City Defendants' Motion to Dismiss

##### 1. Section 1983 Claims Against the Lodi Police Department

The City Defendants argue: "[I]t is established that

naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality. Thus, naming both the City of Lodi and Lodi Police Department serves no purpose and the [Lodi] Police Department should be dismissed." (City Defs.' Mot. 4:10-13 (citation omitted), ECF No. 14.)

"[T]he [p]olice [d]epartment's capacity to be sued in federal court is to be determined by the law of California." Streit v. Cnty. of L.A., 236 F.3d 552, 565 (9th Cir. 2001) (citing Shaw v. Cal. Dep't of Alcoholic Beverage Control, 788 F.2d 600, 604 (9th Cir. 1986)). California Government Code section 945 prescribes: "A public entity may . . . be sued." "Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations." Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 624 n.2 (9th Cir. 1988) (citing Shaw, 788 F.2d at 605). Therefore, this portion the motion is denied.

The City Defendants also argue for the first time in their reply brief that "even if this court finds that the Lodi Police Department is a su[]able entity, this court should dismiss [the Lodi Police Department] because [it] [is] duplicative of the City [of Lodi]." (City Defs.' Reply 4:3-5, ECF No. 26.) However, a "district court need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007). Therefore, this argument is disregarded.

### 2. Excessive Force Claim

The City Defendants seek dismissal of Plaintiffs' § 1983 claim against the City of Lodi and Chief Helms, in which

1  Plaintiffs allege these Defendants ratified the Officer
2  Defendants' excessive use of force. Specifically, the City
3  Defendants argue this claim "should be dismissed because the mere
4  issuance of a press release is insufficient conduct to constitute
5  . . . ratification." (City Defs.' Mot. 6:17-19 (emphasis added).)
6        The movants' reliance on the indefinite article "a" in
7  this portion of the motion indicates that they seek an advisory
8  opinion. "[T]he federal courts established pursuant to Article
9  III of the Constitution do not render advisory opinions. For
10 adjudication of constitutional issues, concrete legal issues,
11 presented in actual cases, not abstractions, are requisite."
12 Golden v. Zwickler, 394 U.S. 103, 108, (1969) (alteration in
13 original) (internal quotation marks omitted) (quoting United Pub.
14 Workers v. Mitchell, 330 U.S. 75, 89, (1947)).

> It has long been [that the federal judiciary's] considered practice [is] not to decide abstract, hypothetical or contingent questions, or to decide any constitutional question in advance of the necessity for its decision, or to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, or to decide any constitutional question except with reference to the particular facts to which it is to be applied . . . .

Ala. State Fed'n of Labor, Local Union No. 103, United Bhd. of Carpenters, 325 U.S. 450, 461 (1945) (citations omitted). Since this portion of the motion seeks an advisory opinion on the issuance of any press release, it is denied.

### 3. Inadequate Training and Supervision Claim

The City Defendants seek dismissal of Plaintiffs' § 1983 claim against Chief Helms, in which Plaintiffs allege

7

liability for "inadequate . . . training and/or supervision of [the Officer Defendants] regarding contacts with persons suffering from mental illness." (Compl. ¶ 57.) The City Defendants argue, inter alia, "The Complaint contains no facts about . . . how the . . . inadequacies [in mental-illness-related training and supervision] factually resulted in [Parminder]'s death." (City Defs.' Mot. 8:21-24.) In essence, the City Defendants argue Plaintiffs have not alleged a causal connection between the referenced inadequacies in training and supervision and the shooting.

To allege the causation element of this claim, Plaintiffs must allege that "action pursuant to official municipal policy of some nature caused [the referenced] constitutional tort"—specifically, "that the policy [was] the 'moving force behind the constitutional violation.'" Berry v. Baca, 379 F.3d 764, 769 (9th Cir. 2004) (quoting Brass v. Cnty. of L.A., 328 F.3d 1192, 1198 (9th Cir. 2003); Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992)).

The following facts from Plaintiffs' Complaint are relevant to whether Plaintiffs have alleged a causal connection between allegedly inadequate mental-illness-related training and supervision and Parminder's death:

> When P[arminder] was a few house-lengths away from the driveway of his [f]amily [h]ome, [the Officer Defendants] yelled at P[arminder] to 'Stop!' P[arminder] responded to [their] commands by turning around to face them.
>
> . . . . P[arminder] had his hands up and yelled "Don't shoot!"
>
> [The Officer Defendants] then shot and killed

8

P[arminder] . . . .

(Compl. ¶¶ 30-32.)

These allegations allege that the Officers Defendants shot an individual who had his hands up. The allegations in the Complaint do not contain facts from which a reasonable inference may be drawn that Parminder's mental illness had a causal connection to the shooting, on which this claim is based. Therefore, this portion of the motion is granted.

### 4. ADA Claim

The City Defendants seek dismissal of Plaintiffs' claim that the City of Lodi and Lodi Police Department failed to accommodate Parminder's disability in violation of Title II of the ADA. Specifically, the City Defendants argue Plaintiffs have failed to allege that Parminder was disabled within the meaning of the ADA since "Plaintiff[s] do[] not aver any facts suggesting that any of his major life activities [were] limited." (City Defs.' Mot. 9:27-10:1.)

"[T]o state a prima facie case under the ADA, [a plaintiff] must show that [a person] is disabled within the meaning of the ADA . . . ." Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999). "To adequately allege an actual disability under the ADA, a plaintiff must allege two elements: '(1) . . . a physical or mental impairment; and (2) that such impairment substantially limits one or more . . . major life activities.'" Daubert v. City of Lindsay, No. 1:10-cv-01588-AWI-SKO, 2010 WL 4814408, at *2 (E.D. Cal. Nov. 19, 2010) (quoting Wernick v. Fed. Reserve Bank of N.Y., 91 F.3d 379, 383 (2d Cir.

9

1996)).

Plaintiffs' Complaint contains the following allegations concerning Parminder's impairment. "[Parminder] was a[] . . . disabled Gulf War veteran who suffered [from] post-traumatic stress disorder and depression . . . ." (Compl. 2:1-2.) "P[arminder] was a qualified individual with a disability under Title II of [the] ADA, and was suffering from a mental illness-related disability at the time of the incident giving rise to this action." (Id. ¶ 66.)

These conclusory allegations are insufficient under the applicable pleading standard to allege facts from which a reasonable inference may be drawn that Parminder suffered from a disability defined in the ADA. Therefore, this portion of the motion is granted.

### B. The Officer Defendants' Motion to Dismiss

#### 1. Unreasonable Provocation Claim

The Officer Defendants seek dismissal of Plaintiffs' § 1983 claim, in which Plaintiffs allege the Officer Defendants "unreasonably, intentionally, and/or recklessly provoked P[arminder] when they were aware that P[arminder] was suffering from a mental illness, and confronted, following, and harassed P[arminder], without probable cause or reasonable suspicion, as P[arminder] attempted to walk to his [f]amily [h]ome from the [p]ark." (Compl. ¶ 62.) The Officer Defendants argue that "ordering the decedent to stop before he reached [his] home was not a Fourth Amendment violation, much less intentional or reckless provocation." (Officer Defs.' Mot. 12:15-17, ECF No. 13.) Further, the Officer Defendants argue the circumstances

leading up to their encounter with Parminder "gave rise to reasonable suspicion that [Parminder] posed a danger to those inside the home and that violent criminal activity would ensue if he made it back to the home." (Id. 12:9-12.)

"[W]here an officer intentionally or recklessly provokes a violent confrontation, if the provocation is an independent Fourth Amendment violation, he may be liable for his [subsequent,] otherwise defensive use of deadly force." Billington v. Smith, 292 F.3d 1177, 1189 (9th Cir. 2002). "Police may detain or seize an individual for brief, investigatory purposes provided the officers making the stop have reasonable suspicion that criminal activity may be afoot." United States v. Johnson, 581 F.3d 994, 999 (9th Cir. 2009) (internal quotation marks omitted). Such a "stop must be justified at its inception and 'reasonably related in scope to the circumstances which justified' the initial stop.'" Hiibel v. Sixth Jud. Dist. Ct. of Nev., Humboldt Cnty., 542 U.S. 177, 188 (2004) (quoting Terry v. Ohio, 392 U.S. 1, 20 (1968)).

Further, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual ... in [a] public place, [and] asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen . . . ." Florida v. Royer, 460 U.S. 491, 497 (1983). Moreover, under a "'community caretaking function[], totally divorced from the detention, investigation, or acquisition of evidence relating to the violation of a criminal statute[,]' . . . , a police officer may have occasion to seize a person . . . in order to ensure the safety of the public and/or

the individual." United States v. King, 990 F.2d 1552, 1560 (10th Cir. 1993) (quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973)). "[A] community caretaking stop requires reasonable belief that the person poses a danger to himself or the public." Shields v. Tracy, No. 03-cv-1614-DFL-PAN, 2005 WL 1490300, at *4 (E.D. Cal. June 21, 2005).

The following facts are relevant to whether Plaintiffs have alleged that, when the Officer Defendants attempted to detain Parminder in the park, they lacked "reasonable suspicion that criminal activity [might] be afoot," Johnson, 581 F.3d at 999, or a "reasonable belief that [Parminder] pose[d] a danger to himself or the public." Tracy, 2005 WL 1490300 at *4. "[Parminder] was a[] . . . disabled Gulf War veteran who suffered [from] post-traumatic stress disorder and depression . . . ." (Comp. 2:1-2.) "P[arminder]'s sister-in-law[] called 9-1-1 to request assistance in transporting P[arminder] to the Veteran's Clinic." (Id. ¶ 18.) "During the telephone call to 9-1-1, [she] explained that P[arminder] was disabled, manifesting symptoms of mental illness, and needed to be transported to the Veteran's Clinic . . . ." (Id. ¶ 19.) When the Officer Defendants arrived at Parminder's home, "[she] provided [the Officer Defendants] the same information she had provided to the dispatcher." (Id. ¶ 23.) The Officer Defendants "told the family that there was nothing they could do because P[arminder] was not home and had not threated violence to himself or others." (Id. ¶ 24.) The Officer Defendants "told [Parminder's sister-in-law] that if they saw P[arminder] they would try to talk to him." (Id. ¶ 25.) The Officer Defendants "saw P[arminder] while he was walking through

12

the [p]ark and attempted to detain him." (Id. ¶ 26.)

The Officer Defendants have not shown why, under the applicable pleading standard, a reasonable inference may not be drawn from pled facts that, upon encountering Parminder in the park, the Officer Defendants lacked "reasonable suspicion that criminal activity [might] be afoot," Johnson, 581 F.3d at 999, or a "reasonable belief that [Parminder] pose[d] a danger to himself or the public." Tracy, 2005 WL 1490300 at *4. Plaintiffs allege in the Complaint that the Officer Defendants stated Parminder had not threatened violence to himself or others, and a reasonable inference cannot be drawn from the facts alleged that Parminder threatened the Officer Defendants. Therefore, this portion of the motion is denied.

### a. Qualified Immunity

The Officer Defendants also argue they are entitled to qualified immunity since "there are insufficient facts to show a pre-shooting Fourth Amendment violation even occurred[, and therefore] [u]nder the circumstances presented, there are insufficient facts indicating that a reasonable officer would have believed that ordering the decedent to stop was unlawful." (Officer Defs.' Mot. 13:15-19.) The Officer Defendants' conclusory argument that they are entitled to be shielded from Plaintiffs' liability allegations under the qualified-immunity doctrine is denied since it is unsupported by facts from the Complaint from which reasonable inferences could be drawn. Therefore, this portion of the motion is denied.

### 2. Deprivation of Association Claim

The Officer Defendants seek dismissal of Plaintiffs'

13

§ 1983 claim, in which Plaintiffs allege that by killing Parminder, the Officer Defendants deprived Plaintiffs of a First Amendment right "to continued association" with him. (Compl. ¶ 75.) Specifically, the Officer Defendants argue: A "First Amendment right to continued association with others . . . is not a cognizable legal theory." (Officer Defs.' Mot. 14:14-16 (citation omitted) (internal quotation marks omitted).) However, the Ninth Circuit has specifically recognized a parent's "right to familial association under . . . the First . . . Amendment[]." Lee v. City of L.A., 250 F.3d 668, 686 (9th Cir. 2001). Therefore, this portion of the Officer Defendants' motion is denied.

The Officer Defendants also argue Parminder's siblings, Plaintiffs Ms. Sohota and Mr. Shergill, "are not proper plaintiffs to bring this [§] 1983 [deprivation of association] claim and must be dismissed." (Officer Defs.' Mot. 15:3-4.) The Officer Defendants point to Ward v. City of San Jose, in which the Ninth Circuit held that siblings do not possess a liberty interest in their sibling's companionship under the Fourteenth Amendment substantive due process clause. 967 F.2d 280, 284 (9th Cir. 1991). However, the Officer Defendants have not shown that the principle enunciated in Ward extends to Plaintiffs' First Amendment claims. Therefore, this portion of the motion is denied.

In addition, the Officer Defendants argue for the first time in their reply brief that "[t]he Complaint offers no factual allegations that [Parminder]'s siblings or mother had any type of expressive relationship with him." (Officer Defs.' Reply 7:16-18,

14

ECF No. 25.) However, a "district court need not consider arguments raised for the first time in a reply brief." Zamani, 491 F.3d at 997. Therefore, this argument is disregarded.

### 3. Negligent Infliction of Emotional Distress Claim

The Officer Defendants seek dismissal of Plaintiffs' claim for negligent infliction of emotional distress ("NIED"), in which Plaintiffs allege "P[arminder] suffered extreme or severe emotional distress at the hands of [the Officer Defendants'] harassing behavior immediately before his death." (Compl. ¶ 91.) The Officer Defendants argue: "There are no known California cases that have held that a police officer and suspect share the . . . type of preexisting relationship which would create a duty to avoid negligent infliction of emotional distress. As such, the [required] duty element . . . is missing." (Officer Defs.' Mot. 17:7-11.)

"[NIED] is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply." Huggins v. Longs Drug Stores Calif., Inc., 6 Cal. 4th 124, 129 (1993). NIED cases fall into two categories. In "'[b]ystander' cases . . . the plaintiff [is] not physically impacted or injured, but instead witnesse[s] someone else being injured due to defendant's negligence." Wooden v. Raveling, 61 Cal. App. 4th 1035, 1037 (1998). In "'[d]irect victim' cases . . . the plaintiff's claim of emotional distress is not based upon witnessing an injury to someone else, but rather is based upon the violation of a duty owed directly to the plaintiff." Id. at 1038. Plaintiffs' NIED claim is a "direct victim" claim since

15

it is brought on behalf of Parminder. "[A] right to recover for emotional distress as a 'direct victim' arises from the breach of a duty that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of the defendant's preexisting relationship with the plaintiff." Huggins, 6 Cal. 4th at 129.

> The policy considerations to be taken into account in determining whether a duty is imposed by law . . . [include] "*the foreseeability of harm to the plaintiff*, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."

Friedman v. Merck & Co., 107 Cal. App. 4th 545, 464-65 (2003) (emphasis in original) (quoting Rowland v. Christian, 69 Cal. 2d 108, 113 (1968)).

The Officer Defendants' conclusory argument fails to address whether Plaintiffs' factual allegations in the Complaint gave rise to a duty to avoid causing Parminder "extreme and severe emotional distress . . . [from] harassing behavior immediately before his death," as alleged in Plaintiffs' NEID claim. (Compl. ¶ 91.) Therefore, this portion of the motion is denied.

### IV. CONCLUSION

For the stated reasons, the City Defendants' motion is granted in part and denied in part, and the Officer Defendants'

motion is denied. However, Plaintiffs are granted fourteen (14) days from the date on which this order is filed to file an amended complaint addressing the deficiencies in any dismissed claim.

Dated:  August 6, 2014

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge