1 | Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
2 | **LAW OFFICE OF MARK E. MERIN**
1010 F Street, Suite 300
3 | Sacramento, California 95814
Telephone:     (916) 443-6911
4 | Facsimile:     (916) 447-8336
E-Mail:        mark@markmerin.com
5 |               paul@markmerin.com

6 | Attorneys for Plaintiffs

7 | UNITED STATES DISTRICT COURT

8 | EASTERN DISTRICT OF CALIFORNIA

9 | SACRAMENTO DIVISION

10 | SUKHWINDER KAUR, individually and as the successor in interest for the Decedent PARMINDER SINGH SHERGILL;
11 | KULBINDER KAUR SOHOTA; SARABJIT SINGH SHERGILL,
12 |
13 | Plaintiffs,
14 | vs.
15 | CITY OF LODI; CITY OF LODI POLICE DEPARTMENT; MARK HELMS, in his individual capacity as the Chief of Police for the
16 | City of Lodi; SCOTT BRATTON, in his individual capacity as a City of Lodi Police
17 | Officer; ADAM LOCKIE, in his individual capacity as a City of Lodi Police Officer; and
18 | DOES 1 through 50, inclusive,
19 | Defendants.

Case No. 2:14-cv-00828-GEB-AC

**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS**

**DEMAND FOR JURY TRIAL**

## **INTRODUCTION**

On January 25, 20145, PARMINDER SINGH SHERGILL ("PARMINDER") was shot and killed by two Lodi City Police Officers while walking in his quiet Lodi neighborhood. His surviving mother, SUKHWINDER KAUR ("MRS. KAUR") and siblings, KULBINDER KAUR SOHOTA ("KULBINDER") and SARABJIT SINGH SHERGILL ("SARABJIT"), bring this action for damages under the 1964 Civil Rights Act (42 U.S.C. § 1983) for violation of rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and applicable provisions of the California State Constitution and statutes as set forth in this Complaint.

1

PARMINDER was an honorably discharged, disabled Gulf War veteran who suffered post-traumatic stress disorder and depression for which he was receiving treatment from a private physician located in Lodi, California, and at the Veterans Affairs Clinic ("Veteran's Clinic") located in French Camp, California. On the morning of January 25, 2014, PARMINDER became anxious and his family wanted him to go to the Veteran's Clinic to receive treatment. As they had done on previous occasions, they contacted the CITY OF LODI POLICE DEPARTMENT to request assistance for the transportation of PARMINDER to the Veteran's Clinic for care and treatment associated with his mental illness. CITY OF LODI Police Officers, SCOTT BRATTON ("BRATTON") and ADAM LOCKIE ("LOCKIE"), responded to PARMINDER's residence and were told that he was not at home, but had gone for a walk, which was a daily activity for PARMINDER. Officers BRATTON and LOCKIE told PARMINDER's family that there was nothing they could do because PARMINDER was not a threat to himself or others, but stated that they would talk to him if they encountered PARMINDER.

After leaving PARMINDER's home, Officers BRATTON and LOCKIE located PARMINDER in a park two (2) blocks away and confronted him, attempted to stop him for questioning, and proceeded to follow him when he did not answer their questions as he walked toward home. When PARMINDER reached the street on which he lived, just a few houses from his home, Officers BRATTON and LOCKIE drew their firearms, and confronted PARMINDER by yelling at him. PARMINDER turned around to face Officers BRATTON and LOCKIE in response. When PARMINDER turned around, Officers BRATTON and LOCKIE opened fire multiple times using their police-issued firearms, killing PARMINDER. PARMINDER was unarmed and did not threaten Officers BRATTON and LOCKIE at the time he was killed by them in front of witnesses who dispute the CITY OF LODI POLICE DEPARTMENT's statement that PARMINDER threatened them by charging them with a knife and that they had to shoot him.

## JURISDICTION

1.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 (in that they arise under the United States Constitution); 28 U.S.C. § 1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities

2

**FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**
*Kaur v. City of Lodi*; United States District Court, Eastern District of California, Case No. 2:14-cv-00828-GEB-AC

1  secured by the United States Constitution). The Court has supplemental jurisdiction of the state

2  law claims under 28 U.S.C. § 1367.

3       2.      Venue is proper in the United State District Court for the Eastern District of

4  California under 28 U.S.C. § 1391(b) because the Defendants are located in the Eastern District of

5  California and because many of the acts and/or omissions described in this Complaint occurred in

6  this District.

7       3.      Intradistrict venue is proper in the Sacramento Division of the United State District

8  Court for the Eastern District of California under Local Rule 120(d) because the claims set forth in

9  this Complaint arise from acts and/or omissions which occurred in the County of San Joaquin,

10  California.

11      4.      On February 20, 2014, Plaintiffs SUKHWINDER KAUR, KULBINDER KAUR

12  SOHOTA, and SARABJIT SINGH SHERGILL filed a Government Tort Claim against the CITY

13  OF LODI for the wrongful shooting and subsequent death of PARMINDER SINGH SHERGILL.

14  The CITY OF LODI failed to act upon that claim within 45 days of receipt; therefore, it was

15  deemed rejected. Cal. Gov. Code § 912.4(a).

16                              **PARTIES**

17      5.      The Decedent, PARMINDER SINGH SHERGILL, was a 43 year old disabled Gulf

18  War veteran at the time of the incident giving rise to this Complaint. PARMINDER graduated

19  from Lodi High School in 1989 and entered active service that same year. PARMINDER was

20  honorably discharged after approximately four (4) years of service, which included service in Iraq

21  during the Gulf War, and returned to the City of Lodi to be with his family and to pursue a college

22  education. On or about 2003, PARMINDER was diagnosed as having schizophrenia, which was

23  treated with medication. Symptoms of his mental illness included depression and agitation from

24  which he suffered periodically. PARMINDER was known by his family, friends, and neighbors to

25  be a kind and gentle man who was never violent, even when he struggled with his mental illness

26  and disability. Prior to being killed on January 25, 2014, PARMINDER enjoyed a routine morning

27  walk to Thomas A. Peterson Park ("Park"), which included greeting his neighbors on his way to

28  and from the Park located around the corner from his family home.

6.     Plaintiff SUKHWINDER KAUR is the mother of the Decedent, PARMINDER SINGH SHERGILL, and his successor in interest. PARMINDER was MRS. KAUR's oldest son; she has two other children, KULBINDER and SARABJIT, who are also Plaintiffs in this lawsuit. MRS. KAUR's husband passed away in 2003. On or about 2003, PARMINDER began living with his mother, MRS. KAUR, and other family members in her family home ("Family Home") located at 23 Elderica Way, Lodi, California. MRS. KAUR had a very close relationship with PARMINDER. Living in the same home permitted MRS. KAUR and PARMINDER to have prolonged, daily contact which they both enjoyed. PARMINDER helped his mother, MRS. KAUR, and his other family members, including, without limitation, siblings, nieces, and nephews with family chores. Under California law, "a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." Cal. Code Civ. Proc. § 377.20. "A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest . . . and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." Cal. Code Civ. Proc. § 377.30. Pursuant to California Code of Civil Procedure section 377.32, MRS. KAUR has filed a declaration in this action demonstrating her status and ability to act as PARMINDER's successor in interest, and incorporates that declaration herein by this reference. (ECF Doc. 15.)

7.     KULBINDER KAUR SOHOTA is PARMINDER's older sister and lived only a few blocks away from the Family Home. KULBINDER had a close relationship with PARMINDER and they would frequently visit, associate, and converse with each other and participated together in family and community events.

8.     SARABJIT SINGH SHERGILL is the younger brother of PARMINDER and lived with MRS. KAUR in the Family Home with his wife and their children. SARABJIT and PARMINDER had a close personal relationship. Living together permitted SARABJIT and PARMINDER to became very close and allowed them to frequently visit, associate, and converse with each other.

9.     The CITY OF LODI is a "public entity" within the definition of California Government Code section 811.2. Pursuant to California Government Code section 945, public entities are subject to suit.

10.     The CITY OF LODI POLICE DEPARTMENT ("L.P.D.") is a department of the CITY OF LODI. The L.P.D. is a "public entity" within the definition of California Government Code section 811.2. Pursuant to California Government Code section 945, public entities are subject to suit.

11.     MARK HELMS ("HELMS") is, and at all times relevant to this Complaint was, the Chief of Police for the L.P.D. employed by the CITY OF LODI. HELMS possesses policy-making authority for the L.P.D. and is responsible for the implementation and maintenance of L.P.D. policies, including, without limitation, policies relating to the use of force and relating to contacts with persons suffering from mental illness-related disabilities. HELMS is also responsible for the supervision, training and discipline of L.P.D. officers under his command. HELMS is sued in his individual capacity.

12.     SCOTT BRATTON is, and at all times relevant to this Complaint was, a police officer for the L.P.D. employed by the CITY OF LODI. BRATTON is sued in his individual capacity.

13.     ADAM LOCKIE is, and at all times relevant to this Complaint was, a police officer for the L.P.D. employed by the CITY OF LODI. LOCKIE is sued in his individual capacity.

14.     DOES 1 through 50 are and/or were the agents or employees of the CITY OF LODI or the County of San Joaquin and acted within the scope of that agency or employment relationship. The true and correct names of DOES 1 through 50 are not yet known to Plaintiff who sues the Defendants by their fictitious names. Plaintiff will substitute the true and correct names of these Defendants when ascertained.

## FACTUAL ALLEGATIONS

15.     At all times relevant herein, all wrongful acts described herein by the Defendants were performed under color of state law and/or in concert with, or on behalf of, those acting under the color of state law.

16.     PARMINDER was diagnosed as having schizophrenia in 2003. PARMINDER's mental illness disabled him to the point that he was unable to hold employment beginning in or around 2003. Prior to the onset of his mental illness, PARMINDER was a college student who sought to learn and obtain an education. However, in or about 2003, PARMINDER was no longer able to learn in the manner necessary to continue attending college course. Additionally, PARMINDER became unable to care for himself and began to live in the Family Home for the purpose of receiving the support and care of his extended family. PARMINDER's mental illness prevented or severely restricted him from doing activities that are of central importance to most people's daily lives.

17.     PARMINDER experienced the symptoms of his mental illness periodically since 2003 when he was diagnosed as a schizophrenic. When manifesting symptoms of his mental illness, PARMINDER would become depressed and anxious, but he never exhibited any violent tendencies or threatened violence to himself or others. He frequently heard voices and engaged in conversations with invisible people, many of whom appeared to be threatening to him.  During his episodes of manifest mental illness, Parminder appeared not to comprehend what was being said to him or to be capable of responding appropriately.  He also appeared to be reliving aspects of his Gulf War army service and, at time, appeared to believe people were after him or that members of his platoon needed his assistance.

18.     At times, PARMINDER's illness manifested itself when he failed to take his prescribed medication, and it was then that family members sought assistance from the L.P.D. to transport him to the Veteran's Clinic for treatment.

19.     Prior to January 25, 2014, various members of PARMINDER's extended family contacted police, social workers, and Veterans Affairs employees on multiple occasions for assistance in obtaining care and treatment for PARMINDER's mental illness. L.P.D. was dispatched and contacted PARMINDER's family on at least two occasions prior to January 25, 2014, specifically to assist PARMINDER and his family with PARMINDER's mental illness.

20.     On January 25, 2014, PARMINDER manifested the symptoms of his mental illness.

6

21.     PARMINDER's family, including MRS. KAUR, concluded that PARMINDER was in need of psychiatric care and treatment. Kuldeep Shergill ("Kuldeep"), who is MRS. KAUR's daughter-in-law and PARMINDER's sister-in-law, called 9-1-1 to request assistance in transporting PARMINDER to the Veteran's Clinic.

22.     During the telephone call to 9-1-1, Kuldeep explained that PARMINDER was disabled, manifesting symptoms of his mental illness, acting "crazy" and needed to be transported to the Veteran's Clinic where he could obtain care and treatment for his disability.

23.     Dispatch told Kuldeep that officers would be sent to the Family Home. The dispatcher informed Kuldeep that they had received a similar call regarding PARMINDER in October 2013.

24.     Before officers arrived, PARMINDER left the Family Home to walk to the Park. Walking to the Park was a morning routine for PARMINDER.

25.     L.P.D. Police Officers BRATTON and LOCKIE arrived and contacted MRS. KAUR, SARABJIT, and Kuldeep at the front door of the Family Home.

26.     The family told Officers BRATTON and LOCKIE that PARMINDER had left the Family Home. Kuldeep provided Officers BRATTON and LOCKIE with the same information she had provided to the dispatcher which was that PARMINDER was presently suffering from mental illness and needed to be transported to the Veteran's Clinic for care and treatment.

27.     Officers BRATTON and LOCKIE told the family that there was nothing they could do because PARMINDER was not home and had not threatened violence to himself or others. Officers BRATTON and LOCKIE asked Kuldeep if PARMINDER was in the area. Kuldeep told Officers BRATTON and LOCKIE that PARMINDER routinely walked to the Park in the morning, and that PARMINDER may be in the area.

28.     Officers BRATTON and LOCKIE told Kuldeep that if they saw PARMINDER they would try to talk with him. Officers BRATTON and LOCKIE left the Family Home and drove to the Park.

29.     At the Park, there was a morning yoga class occurring and multiple attendees were present.

7

30.     Officers BRATTON and LOCKIE saw PARMINDER while he was walking through the Park and attempted to detain him.

31.     Officers BRATTON and LOCKIE had no probable cause or reasonable suspicion to arrest, detain, search, or order PARMINDER to submit to questioning.

32.     When the Officers BRATTON and LOCKIE confronted PARMINDER he walked away from the officers, crossed the street at Evergreen Drive, and began to walk along the south sidewalk of Elderica Way towards his Family Home.

33.     At the time Officers BRATTON and LOCKIE contacted PARMINDER near the Park, had they been adequately trained to deal with persons suffering from mental illness such as PARMINDER, Officers BRATTON and LOCKIE would have realized that he would not respond to commands in a traditional way, that he would become upset by intrusive voices, and that he would become scared or paranoid, when being followed by armed officers and ordered to follow directions. Had Officers BRATTON and LOCKIE received proper training they would have known there were multiple options available to them both prior to and after confronting PARMINDER. For example, Officer BRATTON and LOCKIE could have respected PARMINDER's comfort zone, engaged in non-threatening communications, and/or used the passage of time to defuse the situation. They could have backed off; they could have called and sought advice from persons trained in crisis intervention or others trained in how properly to deal with mentally ill persons. If they thought force might be needed, they could have obtained non-lethal weapons for such purposes. Officers BRATTON and LOCKIE pursued none of these available options. Had they pursued these and other techniques in which they should have been trained, the Officers would not have shot and killed PARMINDER.

34.     Instead of using any of the techniques listed above or others in which they should have been trained, Officers BRATTON and LOCKIE followed closely behind PARMINDER and repeatedly yelled at PARMINDER, demanding that PARMINDER submit to their questioning. Officers BRATTON and LOCKIE drew their police-issued firearms and trained them on PARMINDER, as he was facing away from the officers and continued to walk towards his Family Home.

35.     As PARMINDER and Officers BRATTON and LOCKIE made a right-hand turn and proceeded in a southward direction on Elderica Way, they were no longer within the eyesight of the yoga class attendees at the Park.

36.     At this time, approximately six house-lengths separate PARMINDER from his Family Home.

37.     Seconds after making the turn on Elderica Way and leaving the eyesight of multiple witnesses in the Park, Officers BRATTON and LOCKIE yelled at PARMINDER to "Stop!" PARMINDER responded to Officer BRATTON and LOCKIE's commands by turning around to face them.

38.     Approximately 20 feet separated PARMINDER from Officers BRATTON and LOCKIE when PARMINDER turned around to face Officers BRATTON and LOCKIE. PARMINDER had his hands up and yelled "Don't shoot!"

39.     Officers BRATTON and LOCKIE both opened fire on PARMINDER. The autopsy of PARMINDER's body revealed that he was riddled with 14 bullet wounds, striking his body in multiple locations, including the back, head, neck, arms, torso, and legs. The bullets entered PARMINDER's body at various trajectories, suggesting that Officers BRATTON and LOCKIE continued to shoot PARMINDER even as he fell to the ground. PARMINDER's body landed in the gutter near the driveway of the home located at 62 Elderica Way.

40.     While PARMINDER was dying in the gutter, Officers BRATTON and LOCKIE applied handcuffs to PARMINDERS hands and began to search PARMINDER's body, throwing various items which were in PARMINDER's pockets onto the nearby sidewalk and street.

41.     Officers BRATTON and LOCKIE did not attempt to utilize life-saving or resuscitative techniques on PARMINDER.

42.     Upon hearing the loud, multiple gunshots, PARMINDER's younger brother, SARABJIT, exited the Family Home. SARABJIT saw his brother, PARMINDER, laying in the gutter and ran towards PARMINDER.

43.     Officers BRATTON and LOCKIE yelled at SARABJIT to "Go home!" SARABJIT stated "That's my brother" to Officers BRATTON and LOCKIE. Officers BRATTON and

LOCKIE told SARABJIT to go back to his Family Home and wait there for police to come and speak with him. SARABJIT followed Officer BRATTON and LOCKIE's instructions, and went back to the Family Home.

44.     An ambulance arrived at the scene. The ambulance technician required that the handcuffs be removed from PARMINDER's hands and took PARMINDER's body away.

45.     PARMINDER was pronounced dead upon arrival at the hospital.

46.     Immediately following the shooting, Officers BRATTON and LOCKIE falsely reported that PARMINDER had drawn a knife and charged at the officers immediately prior to the shooting..

47.     That same day, L.P.D. officers contacted neighbors and other potential witnesses in the immediate area of the shooting to obtain statements from those witnesses as to what they saw and heard prior to, during, and after the shooting of PARMINDER occurred.

48.     Two eye-witnesses to the shooting were interviewed. The witnesses had a largely-unobstructed view of PARMINDER and Officers BRATTON and LOCKIE, because they were situated in the second story of the home in front of which PARMINDER was shot. Both eye-witnesses stated that PARMINDER did not charge at Officers BRATTON or LOCKIE, and did not present a threat to the officers, immediately before the shooting. No eye-witness observed a knife in PARMINDER's hand.

49.     Later that same day, through Chief of Police HELMS, the L.P.D. issued a press statement regarding the shooting and PARMINDER's subsequent death. The statement was delivered by L.P.D. Lieutenant Sierra Brucia to members of the media, and included the following statements:

> "During their contact, [PARMINDER] charged the officers with the knife, and the officers were forced to shoot him."

> "This is [the] very early stages, but our officers had no choice. And that's what I want to make clear at this point. Because of the suspect's actions, our officers had no choice and they had to shoot him."

50.     The above-referenced statements by L.P.D. Lt. Brucia were false, unsupported, and directly contradicted statements made by multiple witnesses whose accounts L.P.D. officers obtained earlier that same day.

51.     Approximately one week after shooting PARMINDER to death, Officers BRATTON and LOCKIE were permitted to return to work. Chief HELMS made the decision permitting the officers to return to work, despite the fact that investigations by the L.P.D., San Joaquin District Attorney's Office, and the Department of Justice were not yet concluded. Ample evidence and investigation related to the incident were not yet complete when the officers were permitted to return to work. The District Attorney's decision on whether to file criminal charges against the officers had not yet been made. Chief HELMS was aware of all of these circumstances when he permitted Officers BRATTON and LOCKIE to return to their positions as armed police officers roaming the streets.

52.     On February 14, 2014, Chief HELMS agreed to a video-recorded interview with NEWS10 to address the shooting of PARMINDER. Chief HELMS made the following statement during the interview:

> "These officers in this incident are veterans, respected and well-trained. They did what they were trained to do. It's a difficult pill to swallow but this is a person who attacked police with a knife."

53.     The above-referenced statements by Chief HELMS were false, unsupported, and directly contradicted statements made by multiple witnesses whose accounts L.P.D. officers had obtained during the course of their investigation. Chief HELMS knew that eye-witnesses had provided accounts directly contradicting those of Officers BRATTON and LOCKIE, yet chose to disregard the evidence contradicting the officers' accounts and to disseminate a disputed version of the events surrounding PARMINDER's shooting that he had no personal knowledge was accurate.

54.     In April 2014, Chief HELMS organized a community meeting with local Sikh residents, which included family members of PARMINDER. At the meeting, Chief HELMS stated that the need for additional mental health services, particularly in the context of mentally ill veterans such as PARMINDER, was particularly dire within the CITY OF LODI, because many other communities provided "more resources" and "more places" for the mentally ill to go,

11

"beyond what we are doing here." Chief HELMS characterized the increase in mentally ill persons as a "police issue," because the police are the only agency able to respond 24 hours a day.

## CITY DEFENDANTS' CUSTOMS & POLICIES

55.     City of Lodi Ordinance 2.24.020 requires the CITY OF LODI to "adhere to the standards for recruitment and training established by the State Commission on Peace Officer Standards and Training."

56.     Acting as the L.P.D. Chief of Police, HELMS is responsible for the implementation and maintenance of various L.P.D. policies related to the training, supervision and discipline of L.P.D.'s police officers. Specifically, Chief HELMS is responsible for L.P.D.'s policies related to use of force and its officers' contacts with persons suffering from mental illness-related disabilities.

57.     Prior to January 25, 2014, Chief HELMS failed to implement and/or to maintain an adequate L.P.D. policy related to officer contacts with individuals suffering from mental illness-related disability and the use of force on these individuals. Chief HELMS was either aware of the non-existence or inadequacy of a policy, believing, mistakenly, that it was not necessary or was deliberately indifferent to the non-existence of, or inadequacy of, this type of important policy. Regardless of the existence of a policy relating to how officers should interact with mentally ill persons, Chief HELMS failed to train, supervise and/or discipline L.P.D. police officers related to necessary skills including, without limitation:

a)     how to approach persons suffering from mental illness;

b)     how to speak to persons suffering from mental illness;

c)     how to interact with persons suffering from mental illness (including using appropriate body language and tone of voice);

d)     how to respect the personal space of persons suffering from mental illness;

e)     reasonably how to accommodate the disability of persons suffering from mental illness; and

f)     how to deescalate, without use of force, incidents involving persons suffering from mental illness.

58.     Chief HELMS' failure to implement and/or to maintain these types of policies resulted in the inadequate training, supervision and/or discipline of L.P.D. officers who contacted persons suffering from mental illness. Specifically, Chief HELMS' acquiescence in, and/or deliberate indifference to, the maintenance of an adequate policy contributed to the unreasonable use of force used against PARMINDER which resulted in his death, because Officers BRATTON and LOCKIE were not adequately trained, supervised, and/or disciplined in a manner that would make them aware of the necessity to utilize the above-described skills when confronting mentally ill persons.

**FIRST CLAIM**

**Excessive Force**

**(Fourth & Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983)**

59.     Plaintiffs reallege and incorporate the allegations of each and every preceding paragraph of this Complaint, to the extent relevant, as if fully set forth in this Claim.

60.     The First Claim is asserted by Plaintiff SUKHWINDER KAUR, as successor in interest for the Decedent PARMINDER SINGH SHERGILL, against Defendants SCOTT BRATTON, ADAM LOCKIE, and DOES 1 through 50.

61.     As incorporated through the Fourteenth Amendment, the Fourth Amendment prohibits the use of excessive force to effectuate the seizure of a person.

62.     Defendants BRATTON and LOCKIE used excessive and deadly force to seize PARMINDER, when Defendants BRATTON and LOCKIE shot and killed PARMINDER while he was unarmed and presented no immediate danger to Defendants BRATTON and LOCKIE or to the general public. Defendant BRATTON and LOCKIE's unreasonable seizure of PARMINDER violated his Fourth and Fourteenth Amendment rights.

63.     As a direct and proximate result of the Defendant BRATTON and LOCKIE's actions and inactions, PARMINDER suffered injuries entitling Plaintiff MRS. KAUR, as PARMINDER's successor in interest, to receive compensatory and punitive damages against Defendants BRATTON and LOCKIE.

WHEREFORE, Plaintiffs pray for relief as hereunder appears.

13

## SECOND CLAIM

### Intentional or Reckless Provocation

### (Fourth & Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983)

64.     Plaintiffs reallege and incorporate the allegations of each and every preceding paragraph of this Complaint, to the extent relevant, as if fully set forth in this Claim.

65.     The Second Claim is asserted by Plaintiff SUKHWINDER KAUR, as successor in interest for the Decedent PARMINDER SINGH SHERGILL, against Defendants SCOTT BRATTON, ADAM LOCKIE, and DOES 1 through 50.

66.     As incorporated through the Fourteenth Amendment, the Fourth Amendment prohibits an officer's intentional or reckless provocation of a person which leads to a violent confrontation.

67.     Defendants BRATTON and LOCKIE intentionally or recklessly provoked PARMINDER when they were aware that PARMINDER was suffering from a mental illness, and confronted, harassed, stalked, and pointed their firearms at PARMINDER, without probable cause or reasonable suspicion, as PARMINDER attempted to walk to his Family Home from the Park. Defendants BRATTON and LOCKIE subsequently used excessive and deadly force against PARMINDER to kill him. Defendant BRATTON and LOCKIE's provocation of PARMINDER intentionally or recklessly led to the shooting and subsequent death of PARMINDER, in violation of PARMINDER's Fourth and Fourteenth Amendment rights. Defendant BRATTON and LOCKIE's intentional or reckless provocation of PARMINDER was an independent violation of PARMINDER's Fourth Amendment rights, separate from their use of excessive and deadly force.

68.     As a direct and proximate result of Defendant BRATTON and LOCKIE's actions and inactions, PARMINDER suffered injuries entitling Plaintiff MRS. KAUR, as PARMINDER's successor in interest, to receive compensatory and punitive damages against Defendants BRATTON and LOCKIE.

WHEREFORE, Plaintiffs pray for relief as hereunder appears.

14

### THIRD CLAIM

**Deprivation of Familial Association**

**(Fourteenth Amendment to the United States Constitution; 42 U.S.C. § 1983)**

69.     Plaintiffs reallege and incorporate the allegations of each and every preceding paragraph of this Complaint, to the extent relevant, as if fully set forth in this Claim.

70.     The Third Claim is asserted by Plaintiff SUKHWINDER KAUR, individually, against Defendants SCOTT BRATTON, ADAM LOCKIE, and DOES 1 through 50.

71.     The Due Process Clause of the Fourteenth Amendment provides protection for a liberty interest in the familial relationship between a parent and her child. The deprivation of a liberty interest in a manner which "shocks the conscience" is a substantive violation of rights protected by the Fourteenth Amendment.

72.     Plaintiff MRS. KAUR is the mother of the Decedent, PARMINDER, and possesses a liberty interest in her familial relationship with PARMINDER. Defendant BRATTON and LOCKIE's unreasonable use of excessive and deadly force against PARMINDER has deprived Plaintiff MRS. KAUR of her interest in familial association, companionship, and society with her son in a manner which "shocks the conscience," in violation of her substantive due process rights guaranteed by the Fourteenth Amendment. Defendant BRATTON and LOCKIE's actions were deliberately indifferent to Plaintiff MRS. KAUR's Fourteenth Amendment right to familial companionship and society with PARMINDER.

73.     As a direct and proximate result of Defendant BRATTON and LOCKIE's actions and inactions, Plaintiff MRS. KAUR suffered injuries entitling her to receive compensatory and punitive damages against Defendants BRATTON and LOCKIE.

WHEREFORE, Plaintiffs pray for relief as hereunder appears.

### FOURTH CLAIM

**Deprivation of Association**

**(First & Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983)**

74.     Plaintiffs reallege and incorporate the allegations of each and every preceding paragraph of this Complaint, to the extent relevant, as if fully set forth in this Claim.

15

75.     The Fourth Claim is asserted by Plaintiffs SUKHWINDER KAUR, individually, KULBINDER KAUR SOHOTA, and SARABJIT SINGH SHERGILL, against Defendants SCOTT BRATTON, ADAM LOCKIE, and DOES 1 through 50.

76.     As incorporated through the Fourteenth Amendment, the First Amendment confers the right to continued association with others. Specifically, the First Amendment protects certain intimate human relationships that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs, but also distinctively personal aspects of one's life.

77.     Plaintiffs MRS. KAUR, KULBINDER, and SARABJIT did share an intimate human relationship with their son/brother, PARMINDER, such that their First Amendment rights to continued association with PARMINDER were violated when PARMINDER was killed by Defendants BRATTON and LOCKIE. Defendant BRATTON and LOCKIE's actions were deliberately indifferent to Plaintiff MRS. KAUR, KULBINDER, and SARABJIT's First Amendment rights to continued association with PARMINDER.

78.     As a direct and proximate result of Defendant BRATTON and LOCKIE's actions and inactions, Plaintiffs MRS. KAUR, KULBINDER, and SARABJIT suffered injuries entitling them to receive compensatory and punitive damages against Defendants BRATTON and LOCKIE.

WHEREFORE, Plaintiffs pray for relief as hereunder appears.

## FIFTH CLAIM

### Inadequate Customs or Policies

### (Fourteenth Amendment to the United States Constitution; 42 U.S.C. § 1983)

79.     Plaintiffs reallege and incorporate the allegations of each and every preceding paragraph of this Complaint, to the extent relevant, as if fully set forth in this Claim.

80.     The Fifth Claim is asserted by Plaintiff SUKHWINDER KAUR, as successor in interest for the Decedent PARMINDER SINGH SHERGILL, against Defendants CITY OF LODI, CITY OF LODI POLICE DEPARTMENT, MARK HELMS, and DOES 1 through 50

81.     Defendant Chief HELMS acquiesced in, and/or was deliberately indifferent to, the implementation or maintenance of an inadequate customs or policies relating to the training,

16

supervision and/or discipline of L.P.D. officers regarding contacts with person suffering from mental illness, as described above. Defendants CITY OF LODI, L.P.D., and Chief HELMS maintained a custom or policy of inadequately training, supervising and/or disciplining its police officers responsible for contacting persons suffering from mental illness, and those Defendants were deliberately indifferent to the needs of persons suffering from mental illness. The inadequacy of the custom or policy was the moving force behind Defendant BRATTON and LOCKIE's use of excessive and deadly force against PARMINDER.

82.     As a direct and proximate result of Defendants CITY OF LODI, L.P.D., and HELMS' actions and inactions, PARMINDER suffered injuries entitling Plaintiff MRS. KAUR, as PARMINDER's successor in interest, to receive compensatory damages against Defendants CITY OF LODI, L.P.D., and HELMS, and punitive damages against Defendant HELMS.

WHEREFORE, Plaintiffs pray for relief as hereunder appears.

## SIXTH CLAIM

### Ratification

### (Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983)

83.     Plaintiffs reallege and incorporate the allegations of each and every preceding paragraph of this Complaint, to the extent relevant, as if fully set forth in this Claim.

84.     The Sixth Claim is asserted by Plaintiff SUKHWINDER KAUR, as successor in interest for the Decedent PARMINDER SINGH SHERGILL, against Defendants CITY OF LODI, CITY OF LODI POLICE DEPARTMENT, MARK HELMS, and DOES 1 through 50.

85.     Under the Fourteenth Amendment, a public entity is liable for an isolated constitutional violation if its policymaker ratified the actions of the subordinate who committed a constitutional violation.

86.     Defendants CITY OF LODI and L.P.D., acting through its Chief of Police, Defendant HELMS, who is an employee with authority to establish policy with respect to the subject matter of the L.P.D.'s decisions, ratified the violation of PARMINDER's Fourth and Fourteenth Amendment rights by its Officers, Defendants BRATTON and LOCKIE, when they used excessive and deadly force to kill PARMINDER. Defendants CITY OF LODI, L.P.D., and

17

Chief HELMS approved of Defendant BRATTON and LOCKIE's decision to kill PARMINDER, and approved Defendant BRATTON and LOCKIE's basis for making the decision. Defendant CITY OF LODI, L.P.D., and HELMS' decision to ratify the killing of PARMINDER violated his Fourteenth Amendment rights.

87.     As a direct and proximate result of Defendant CITY OF LODI, L.P.D., and HELMS actions and inactions, PARMINDER suffered injuries entitling Plaintiff MRS. KAUR, as PARMINDER's successor in interest, to receive compensatory damages against Defendants CITY OF LODI, L.P.D., and HELMS, and punitive damages against Defendant HELMS.

WHEREFORE, Plaintiffs pray for relief as hereunder appears.

**SEVENTH CLAIM**

**Failure to Reasonably Accommodate Disability**

**(Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*)**

88.     Plaintiffs reallege and incorporate the allegations of each and every preceding paragraph of this Complaint, to the extent relevant, as if fully set forth in this Claim.

89.     The Seventh Claim is asserted by Plaintiff SUKHWINDER KAUR, as successor in interest for the Decedent PARMINDER SINGH SHERGILL, against Defendants CITY OF LODI, CITY OF LODI POLICE DEPARTMENT, and DOES 1 through 50.

90.     Failure to reasonably accommodate a person's disability constitutes a violation of the ADA where, even where police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.

91.     PARMINDER was a qualified individual with a disability under Title II of the ADA, and was suffering from a mental illness-related disability at the time of the incident giving rise to this action. The CITY OF LODI and L.P.D. are public entities under Title II of the ADA.

92.     Defendants BRATTON and LOCKIE knew that PARMINDER was suffering from a mental illness-related disability at the time they contacted, followed, provoked, and subsequently shot PARMINDER to death. Despite Defendant BRATTON and LOCKIE's knowledge of

18

PARMINDER's disability and his need for care and treatment, they failed to make reasonable modification to their policies and practices when modification was necessary to avoid a violent confrontation with PARMINDER because of his disability. Defendants BRATTON and LOCKIE were deliberately indifferent to PARMINDER's need for care and treatment based upon his disability. Had Defendants BRATTON and LOCKIE accommodated PARMINDER'S disability, they would not have shot and killed him.

93.     Defendants CITY OF LODI and L.P.D. are public entities which were on notice of PARMINDER's disability, prior to dispatching Defendants BRATTON and LOCKIE to PARMINDER's Family Home. Therefore, Defendants CITY OF LODI and L.P.D. are vicariously liable for the deliberately indifferent actions of its Officers, Defendants BRATTON and LOCKIE, who failed to provide reasonable accommodation to PARMINDER before employing deadly and unreasonable force.

94.     As a direct and proximate result of Defendants' actions and inactions, PARMINDER suffered injuries entitling Plaintiff MRS. KAUR, as PARMINDER'S successor in interest, to receive compensatory damages against Defendants CITY OF LODI and L.P.D.

WHEREFORE, Plaintiffs pray for relief as hereunder appears.

## EIGHTH CLAIM

### Negligence (Survival Action)

**(California Code of Civil Procedure § 377.30; California Government Code §§ 815.2, 820)**

95.     Plaintiffs reallege and incorporate the allegations of each and every preceding paragraph of this Complaint, to the extent relevant, as if fully set forth in this Claim.

96.     The Eighth Claim is asserted by Plaintiff SUKHWINDER KAUR, as successor in interest for the Decedent PARMINDER SINGH SHERGILL, against Defendants CITY OF LODI, CITY OF LODI POLICE DEPARTMENT, SCOTT BRATTON, ADAM LOCKIE, and DOES 1 through 50.

97.     Defendants BRATTON and LOCKIE, while acting within the course and scope of their duties as police officers employed by the CITY OF LODI and L.P.D., owed PARMINDER a duty of care to act reasonably when using deadly force against him. Defendant BRATTON and

19

1   LOCKIE's use of deadly force against PARMINDER was unreasonable and breached the duty of

2   due care owed to PARMINDER.

3       98.    Defendants CITY OF LODI and L.P.D. are generally liable through the principles

4   of *respondeat superior*/vicarious liability for injuries proximately caused by acts or omissions of

5   their employees acting in the scope of their employment. *See* Cal. Gov. Code §§ 815.2(a), 820.

6       99.    As a direct and proximate result of Defendant BRATTON and LOCKIE's actions

7   and inactions, PARMINDER suffered injuries entitling Plaintiff MRS. KAUR, as PARMINDER'S

8   successor in interest, to receive compensatory damages against Defendants CITY OF LODI,

9   L.P.D., BRATTON and LOCKIE, and punitive damages against Defendant BRATTON and

10  LOCKIE.

11      WHEREFORE, Plaintiffs pray for relief as hereunder appears.

12                          **<u>NINTH CLAIM</u>**

13                       **Negligence (Wrongful Death)**

14  **(California Code of Civil Procedure § 377.60; California Government Code §§ 815.2, 820)**

15      100.   Plaintiffs reallege and incorporate the allegations of each and every preceding

16  paragraph of this Complaint, to the extent relevant, as if fully set forth in this Claim.

17      101.   The Ninth Claim is asserted by Plaintiff SUKHWINDER KAUR, individually,

18  against Defendants CITY OF LODI, CITY OF LODI POLICE DEPARTMENT, SCOTT

19  BRATTON, ADAM LOCKIE, and DOES 1 through 50.

20      102.   Defendants BRATTON and LOCKIE, while acting within the course and scope of

21  their duties as police officers employed by the CITY OF LODI and L.P.D., owed PARMINDER a

22  duty of care to act reasonably when using deadly force against him. Defendant BRATTON and

23  LOCKIE's use of deadly force against PARMINDER was unreasonable and breached the duty of

24  due care owed to PARMINDER.

25      103.   Defendants CITY OF LODI and L.P.D. are generally liable through the principles

26  of *respondeat superior*/vicarious liability for injuries proximately caused by acts or omissions of

27  their employees acting in the scope of their employment. *See* Cal. Gov. Code §§ 815.2(a), 820.

28

20

104.    As a direct and proximate result of Defendant BRATTON and LOCKIE's actions and inactions, Plaintiff MRS. KAUR suffered injuries entitling her to receive compensatory damages against Defendants CITY OF LODI, L.P.D., BRATTON and LOCKIE, and punitive damages against Defendant BRATTON and LOCKIE.

WHEREFORE, Plaintiffs pray for relief as hereunder appears.

### TENTH CLAIM

**Negligent Infliction of Emotional Distress**

**(California Government Code §§ 815.2, 820)**

105.    Plaintiffs reallege and incorporate the allegations of each and every preceding paragraph of this Complaint, to the extent relevant, as if fully set forth in this Claim.

106.    The Tenth Claim is asserted by Plaintiff SUKHWINDER KAUR, as successor in interest for the Decedent PARMINDER SINGH SHERGILL, against Defendants CITY OF LODI, CITY OF LODI POLICE DEPARTMENT, SCOTT BRATTON, ADAM LOCKIE, and DOES 1 through 50.

107.    Defendants BRATTON and LOCKIE, while acting within the course and scope of their duties as police officers employed by the CITY OF LODI and L.P.D., engaged in extreme and outrageous conduct with the intent to cause, or with reckless disregard for the probability of causing, emotional distress, when they contacted, harassed, stalked, provoked, and subsequently shot PARMINDER to death. PARMINDER suffered extreme or severe emotional distress at the hands of Defendants BRATTON and LOCKIE immediately before his death. Defendant BRATTON and LOCKIE's extreme and outrageous conduct of harassing, threatening, and subsequently shooting PARMINDER was the actual and proximate cause of PARMINDER's extreme or severe emotional distress.

108.    Defendants CITY OF LODI and L.P.D. are generally liable through the principles of *respondeat superior*/vicarious liability for injuries proximately caused by acts or omissions of their employees acting in the scope of their employment. *See* Cal. Gov. Code §§ 815.2(a), 820.

109.    As a direct and proximate result of Defendant BRATTON and LOCKIE's actions and inactions, PARMINDER suffered injuries entitling Plaintiff MRS. KAUR, as PARMINDER'S

21

1   successor in interest, to receive compensatory damages against Defendants CITY OF LODI,

2   L.P.D., BRATTON and LOCKIE, and punitive damages against Defendants BRATTON and

3   LOCKIE.

4       WHEREFORE, Plaintiffs pray for relief as hereunder appears.

5   ## ELEVENTH CLAIM

6   ### Interference with Civil Rights

7   **(California Civil Code § 52.1; California Government Code §§ 815.2, 820)**

8       110.    Plaintiffs reallege and incorporate the allegations of each and every preceding

9   paragraph of this Complaint, to the extent relevant, as if fully set forth in this Claim.

10       111.    The Eleventh Claim is asserted by Plaintiff SUKHWINDER KAUR, as successor in

11   interest for Decedent PARMINDER SINGH SHERGILL, against Defendants CITY OF LODI,

12   CITY OF LODI POLICE DEPARTMENT, SCOTT BRATTON, ADAM LOCKIE, and DOES 1

13   through 50.

14       112.    Defendants BRATTON and LOCKIE, while acting within the course and scope of

15   their duties as police officers employed by the CITY OF LODI and L.P.D., interfered with

16   PARMINDER's constitutional rights secured by the Fourth and Fourteenth Amendments to the

17   United States Constitution, article I, section 13 of the California State Constitution, and the ADA,

18   as described above, through "threats, intimidation, or coercion," including, without limitation,

19   verbal directions, orders, and instructions directed at PARMINDER, without probable cause or

20   reasonable suspicion. Additionally, Defendant BRATTON and LOCKIE's contacting, harassing,

21   stalking, brandishing of firearms and use of excessive and deadly force to kill PARMINDER

22   constitutes an interference with PARMINDER's constitutional rights through threats, intimidation,

23   and/or coercion.

24       113.    Defendants CITY OF LODI and L.P.D. are generally liable through the principles

25   of *respondeat superior*/vicarious liability for injuries proximately caused by acts or omissions of

26   their employees acting in the scope of their employment. *See* Cal. Gov. Code §§ 815.2(a), 820.

27       114.    As a direct and proximate result of Defendant BRATTON and LOCKIE's actions

28   and inactions, PARMINDER suffered injuries entitling Plaintiff MRS. KAUR, as PARMINDER'S

22

1  successor in interest, to receive compensatory damages against Defendants CITY OF LODI,

2  L.P.D., BRATTON and LOCKIE, and punitive damages against Defendant BRATTON and

3  LOCKIE. Additionally, Plaintiff MRS. KAUR is entitled to statutory damages and attorneys' fees

4  available under California Civil Code section 52.1.

5         WHEREFORE, Plaintiffs pray for relief as hereunder appears.

6                                        **PRAYER**

7         WHEREFORE, Plaintiffs seeks relief from this Court as follows:

8         1.     For compensatory, general, and special damages in an amount according to proof;

9         2.     For exemplary/punitive damages against Defendants HELMS, BRATTON, and

10  LOCKIE, in an amount sufficient to deter and to make an example of them, because Defendant

11  HELMS, BRATTON and LOCKIE's actions and inactions, either directly or through the creation

12  of customs or policies, were motivated by evil motive or intent, or involved reckless or callous

13  indifference to the federally protected rights of Plaintiffs, and constitute oppression and/or malice

14  resulting in great harm to Plaintiffs;

15        3.     For attorneys' fees as provided by law, pursuant to 42 U.S.C. § 1988, Cal. Code

16  Civ. Proc. § 1021.5, Cal. Civ. Code § 52.1, and any other statutes as may be applicable;

17        4.     For costs of suit; and

18        5.     For any other and further relief as the Court may deem just and proper.

19  DATED: August 11, 2014                          Respectfully Submitted,

20

21

22                                          By:_____
                                                Mark E. Merin
23                                              Paul H. Masuhara
                                                **LAW OFFICE OF MARK E. MERIN**
24                                              1010 F Street, Suite 300
                                                Sacramento, California 95814
25                                              Telephone:    (916) 443-6911
                                                Facsimile:    (916) 447-8336
26

27                                              Attorneys for Plaintiffs

28

                                        23

1

**<u>DEMAND FOR A JURY TRIAL</u>**

2
            A JURY TRIAL IS DEMANDED on behalf of Plaintiffs SUKHWINDER KAUR,

3
KULBINDER KAUR SOHOTA, and SARABJIT SINGH SHERGILL.

4
DATED: August 11, 2014                                    Respectfully Submitted,

5

6

7
                                                          By:_____

8
                                                             Mark E. Merin
                                                             Paul H. Masuhara
                                                             **LAW OFFICE OF MARK E. MERIN**

9
                                                             1010 F Street, Suite 300
                                                             Sacramento, California 95814

10
                                                             Telephone:     (916) 443-6911
                                                             Facsimile:     (916) 447-8336

11
                                                             Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**
*Kaur v. City of Lodi*; United States District Court, Eastern District of California, Case No. 2:14-cv-00828-GEB-AC