UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUKHWINDER KAUR, et al., | No. 2:14-cv-0828 GEB AC PS |
| Plaintiffs, | |
| v. | ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER |
| CITY OF LODI, et al., | |
| Defendants. | |

This is an excessive force action brought by the estate of Parminder Singh Shergill (the decedent), Sukhwinder Kaur (decedent's mother), and decedent's two siblings, against the two City of Lodi police officers who shot the decedent to death, along with the City, its police department and the Chief of Police. The case is proceeding on the Second Amended Complaint. ECF No. 47.

Pending are (1) plaintiff Sukhwinder Kaur's motion to compel discovery, and for sanctions against defendants, and (2) defendants' motion for a protective order to prevent the public dissemination of materials they have produced in discovery. The parties have filed separate Joint Statements for each motion. ECF Nos. 59 & 60.

This matter came on for hearing on January 7, 2015 before the undersigned. Mark Merin and Paul Masuhara appeared for plaintiffs. Amie McTavish appeared for City of Lodi, the City

////

1

of Lodi Police Department, and Mark Helms.  Derick Konz appeared for Scott Bratton and Adam Lockie.

## I. RELEVANT BACKGROUND

### A. Factual Allegations

According to the Second Amended Complaint, the decedent, Parminder Singh Shergill, was an honorably discharged, disabled Gulf War veteran who suffered from post-traumatic stress disorder and depression.  Complaint (ECF No. 47), Introduction at 2.  On the morning of January 25, 2014, decedent failed to take his prescribed medication, and became anxious, so his family wanted him to visit the Veteran's Affairs Clinic ("VAC") in French Camp, California for treatment.  Complaint, Introduction at 2 & ¶ 18.  As they had done in the past, they contacted the City of Lodi Police Department to request assistance for the transportation of the decedent to the VAC.  Complaint, Introduction at 2.  City of Lodi police officers Scott Bratton and Adam Lockie responded to the call at decedent's residence, but were informed that he had gone for a walk, a morning routine for him.  Id.  The officers left the residence after informing the decedent's family that they would talk to the decedent if they saw him.  Id.

Bratton and Lockie located the decedent in a park two blocks away.  Id.  They confronted decedent, attempting to stop him for questioning, and proceeded to follow him when he did not answer their questions as he walked toward home.  Id.  When the decedent reached the street on which he lived, Bratton and Lockie drew their firearms and confronted the decedent by yelling at him.  Id.  As the decedent turned around to face the officers, he held his hands in the air and stated "Don't shoot!"  Complaint, Introduction at 2 & ¶ 44.  The officers then opened fire, shooting the decedent 14 times, even as he fell to the street, killing him.  Complaint ¶ 45.  The decedent was unarmed and did not threaten the officers.  Complaint, Introduction at 2.  Nevertheless, the officers reported that decedent had charged at them with a knife immediately prior to the shooting.  Complaint ¶ 52.

### B. Procedural Background

Plaintiffs filed their original complaint April 3, 2014.  ECF No. 1.  After two motions to dismiss and partial dismissals with leave to amend, the case is now proceeding on the Second

1  Amended Complaint ("complaint") (ECF No. 47).  Plaintiffs are proceeding on their claims under

2  (1) 42 U.S.C. § 1983 for violation of rights guaranteed by the Fourth and Fourteenth

3  Amendments to the U.S. Constitution, (2) Title II of the Americans with Disabilities Act

4  ("ADA"), 42 U.S.C. § 12101 *et seq.*; and (3)  the California State Constitution and other

5  California laws.

6  The parties have stipulated to an order, pursuant to which (1) the City Defendants (City of

7  Lodi, police department and chief of police), will produce police officer personnel files, and

8  (2) plaintiffs will not publicly disclose those files without first giving defendant notice and an

9  opportunity to file a motion for a protective order prohibiting public disclosure of the files.  ECF

10  No. 46.

11  Two separate motions to dismiss are pending before the Honorable Garland E. Burrell, Jr.,

12  one filed by the Officer Defendants and the other by the City of Lodi defendants.  ECF

13  Nos. 13-14.  Judge Burrell has taken those motions under submission.  ECF No. 57.

14  The discovery deadline is February 18, 2016, and trial is set for September 27, 2016.  See

15  ECF No. 24.

16  II.   MOTION TO COMPEL

17  A.   Legal Standards

18  The scope of discovery under Federal Rule of Civil Procedure 26(b) is broad: "Parties

19  may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

20  defense." Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at trial if the

21  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.  As

22  the Supreme Court reiterated in Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978),

23  relevance "has been construed broadly to encompass any matter that bears on, or that reasonably

24  could lead to other matter that could bear on, any issue that is or may be in the case." 437 U.S. at

25  351 (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)).

26  Pursuant to Rule 37(a), a party propounding discovery or taking a deposition may seek an

27  order compelling responses when an opposing party has failed to respond or has provided evasive

28  or incomplete responses.  Fed. R. Civ. P. 37(a)(3)(B).  "[A]n evasive or incomplete disclosure,

answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a) (4). "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection." Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir.) (citing Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981)), cert. dismissed, 506 U.S. 948 (1992).

"The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975). Further, under Fed. R. Civ. P. 26(e)(1)(A), a party who has responded to a request for production must supplement or correct its response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . .."

"[M]atters going to discovery procedural issues are entirely federal in nature." James v. Kiewit Infrastructure West Co., 2013 WL 3863906, at *2 (E.D. Cal. 2013) (Claire, M.J.) (citing Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Federal Civ. Pro. Before Trial § 1:284 (2013)). Discovery (even in a diversity case), "as a procedural matter, is governed in a federal court only by the Federal Rules of Civil Procedure and state discovery practices are irrelevant." American Ben. Life Ins. Co. v. Ille, 87 F.R.D. 540, 542 (D.C. Okl. 1978) (citing 8 Wright & Miller, Federal Practice and Procedure: Civil § 2005 (1970)). See also Eureka Financial Corp v. Hartford Acc. & Indem. Co., 136 F.R.D. 179, 182 n.5 (E.D. Cal. 1991) (Hollows, M.J.); see Fed. R. Civ. P. 26(b)(5). Determination of relevance, for example, is a federal matter. James, 2013 WL 3863906, at *2.

      B.    Discussion

          1.    Dispute Background

Plaintiffs seek to compel (a) production of documents responsive to plaintiff Kaur's Requests for Production of Documents, Set One, submitted to the City Defendants, and (b) further responses to the Officer Defendants' deposition questions, which were terminated by their counsel. Plaintiff Kaur served requests for production on the City Defendants and the Officer Defendants requesting, among other things, "[p]ersonnel files" relating to the Officer Defendants.

In their September 22, 2014 initial responses to the discovery requests, defendants asserted that the document requests were "overbroad in terms of both subject matter and time." In addition, defendants asserted that they would not produce any records from the officer defendants' personnel files on the grounds that they are "confidential and privileged information pursuant to [Cal.] Evidence Code § 1040 et seq. and Penal Code § 832.7 and 832.8." See, e.g., ECF No. 60-1 at 75.

On October 14, 2014, defendants provided a "Privilege Log" which asserted that that the pre-2009 personnel records of the Officer Defendants would not be produced on the grounds of "Relevance," and citing Cal. Evid. Code § 1040, et seq., Cal. Penal Code §§ 832.7 and 832.8, and several district court cases. This privilege log thus clarifies that defendants' claim that the discovery request was "overbroad" as to time, was referring to their view that information more than five years old was not relevant.

On November 24, 2014, defendants made supplemental responses to the document requests. They renewed their objections based on over breadth in "subject matter and time," and on grounds that the officer Defendants' personnel records were confidential and privileged pursuant to Cal. Evid. Code §§ 1040, et seq., Cal. Penal Code §§ 832.7 & 832.8. However, they produced additional documents pursuant to the parties' stipulated protective order (ECF No. 40). In addition, defendants produced a detailed "Privilege Log" of the specific personnel documents they were withholding. ECF No. 60-1 at 180-83. The sole asserted ground for objection in the privilege log was "Relevance," although it also cited the California statutes defendants had previously cited as supporting their claim that the documents were "confidential and privileged." All the documents listed as withheld pre-dated 2009.

On December 19, 2014, defendants served their second supplemental responses to the document requests. They renewed the same state law based objections, but produced additional documents pursuant to the stipulated protective order.

Among the documents that defendants have withheld on grounds of remoteness and lack of relevance are documents relating to an incident in the early 2000's in which Officer Bratton "shot a criminal suspect," and which prompted an investigation by the City of Lodi. ECF No. 60

1  at 32.  Defendants have also withheld documents relating to Officer Bratton's decision to stop
2  using a taser prior to 2010, because he disagreed with the City's policy relating to its use.  Id.  In
3  addition, the "privilege log" discloses that defendants are withholding documents relating to the
4  Officer Defendants' training, performance appraisals, assignments, commendations, injuries,
5  medical records, evaluations and incident reports, as well as unspecified letters, email, memos,
6  and other documents.

7  Consistent with their view that personnel records more than five years old are not
8  "relevant," counsel for the officer defendants instructed their clients not to answer questions if the
9  answer would disclose information from their personnel files that was over five years old.  See,
10 ECF No. 60-1, at 155-64 (deposition excerpts) (regarding "negative EPOs," complaints and IA
11 investigations, "the only questions I'll allow him to answer are within the five years back").

12 Plaintiffs seek compelled production of these withheld documents, as well as a
13 "verification" that defendants have produced or identified every responsive document called for
14 in the document requests.

15        2.      Analysis
16              (a)     Remote documents.

17 Even without making reference to the specific documents that are known to be responsive
18 and relevant, defendants' blanket refusal to produce any and all documents solely because they
19 are more than five years old, and without any analysis of their relevance, is misplaced.  Plaintiff
20 Kaur requested, among other things, training, discipline and performance records, examinations
21 and testing, weapons qualifications, policies regarding use of force and interactions with mentally
22 ill persons, and use of force reports.  ECF No. 60-1 ¶¶ 3(a), 4-9, 12 and 14.

23 It is a matter of common experience that a person's professional training – even the
24 training received immediately upon hiring – may inform his later performance on the job, a
25 matter plainly relevant to these defendants' performances during the shooting of the decedent.
26 Unless defendants intend to argue that all training over five years old is somehow wiped from the
27 officers' brains, there is no obvious basis for concluding that these records are not relevant.
28 Similarly, the officer defendants' qualifications to use the weapons they used to kill decedent, any

prior shootings of citizens, any discipline the officer defendants may have received regarding use of force, their prior interactions with mentally ill persons, and any number of other matters potentially contained in these withheld documents, are plainly relevant to this lawsuit, no matter the age of the document.

In any event, it is defendants' burden to show why admittedly responsive documents are not subject to discovery.  Blankenship, 519 F.2d at 429.  Their only attempt to meet this burden is to assert that "personnel records older than five years are not relevant to this case."  ECF No. 60 at 54.  Defendants' simple assertion of the conclusion that older documents "are not relevant" does not meet their burden.  Moreover, discovery is proper if it appears "reasonably calculated to lead to the discovery of admissible evidence."  Defendants' simple assertion does not explain why the discovery they are resisting is not reasonably calculated to lead to admissible evidence.

Defendants also assert that withholding "remote personnel records [is] consistent with local practice."  ECF No. 60 at 54.  However, the cases defendants cite do not support the proposition that responsive and relevant documents may be withheld because of their age. In Johnson v. Sandy, 2014 WL 7335228 (E.D. Cal. 2014) (Mendez, J.), a prisoner case, the court reviewed documents *in camera*.  The court did not find that their remoteness in time made them irrelevant.  Rather, it determined that "the complaint made in those documents, which was made four years prior to the incident that is the subject of this action, is not sufficiently similar to the claims raised in the instant action to lead to any evidence admissible at the trial of this matter." Id., at *1.  There is no indication that the discovery would have been denied if the 4-year-old complaint was "sufficiently similar" to the case before the court.

In Hallon v. City of Stockton, 2012 WL 394200, at *5 (E.D. Cal. 2012) (Hollows, M.J.), defendants asserted, and the court considered "[t]he federal privilege applicable to the government interest in preserving confidentiality of law enforcement records," in addition to assertions of relevance, privacy and state privilege.  Id., at *1 & *4 (emphasis added).  Finding that the "federal 'qualified' governmental privilege is consistent with California statutes according a qualified privilege to peace officer personnel records," the court went on to use

California privilege law as a guide in determining which personnel records should be disclosed. On that basis, the court used California privilege law, namely, Cal. Evid. Code § 1045 as the basis for limiting disclosure of personnel records to "five years."

However, the court also stated: "The undersigned has found the proviso of § 1045 that information will be deemed per se irrelevant if it includes 'complaints concerning conduct occurring more than five years before the event or transaction which is the subject of the litigation,' too rigid to comport with federal law, in which 'remoteness' is a matter generally weighed in determining the relevance of particular information." Rather, in deciding on whether to permit discovery of internal affairs investigations, the court stated that "relevance is the dispositive factor in directing disclosure of internal affairs investigations." Id., at *5.

Moreover, Hallon does not appear to be relevant to this case, inasmuch as that case is predicated upon the assertion of a federal privilege, namely the official information privilege. Defendants here have never asserted any federal privilege. Rather, they have asserted only the state official information privilege, and the privilege applicable to the personnel files of police officers. With no federal privilege to consider, there is no basis for this court to simply impose a state privilege on the discovery process applicable to this federal case.[1]

Moreover, as to the California statute relating specifically to the personnel records of police officers, the statute does not preclude discovery, even if the court were to apply it. Rather, it provides, "Peace officer or custodial officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code." Cal. Penal Code § 832.7 (emphasis

---

[1] In Martinez v. City of Pittsburg, 2012 U.S. Dist. LEXIS 27225, at *14 (N.D. Cal. 2012) (Beeler, M.J.), the court determined "that the City's offer [to produce documents less than five years old] is a reasonable one that will provide Mr. Martinez with information relevant to his claims and will reduce the City's burden in producing it. Accordingly, the City shall produce documents responsive to RFP Nos. 21-26 from five years to the present." In light of the above discussion, the court does not believe that this establishes a "local practice" which this court must or should follow. Rather, it is a finding made in a specific case, citing only Cal. Penal Code § 832.7 as a basis for the five year limitation.

added). The referenced discovery sections require only that the person seeking discovery make a written motion for it, with notice to the governmental agency holding the records. Cal. Evid. Code § 1043. Of course, these discovery procedures do not apply in federal court in any event.

The court is particularly reluctant to permit the use of state privileges that were enacted by the state specifically to protect its own local police officers, when this civil rights action "was instituted in federal court under a federal statute, 42 U.S.C. § 1983, which was enacted particularly to vindicate federal rights against deprivation by state action." Kerr v. U.S. Dist. Court for Northern Dist. of California, 511 F.2d 192, 197 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976).

> No good reason exists why state actors in a federal question case should be accorded preferential treatment in asserting privileges, merely because the California legislature has chosen to enact a statute making it more difficult for plaintiffs to obtain police personnel files in state cases.

Miller v. Pancucci, 141 F.R.D. 292, 299 (C.D. Cal. 1992) (Rose, M.J.).

The court concludes that defendants have failed to justify their blanket withholding of personnel records that are older than five years. The court will order production of the withheld documents, and the withheld deposition answers, with the proviso that defendants may withhold specific documents or information only if they provide specific information about why the documents or answers are not relevant to this case, and are not likely to lead to the discovery of admissible evidence. Defendants are cautioned that the court will not accept a simple statement of "relevance" or the use of case string cites, as they have done thus far.

(b) Other possibly withheld documents.

Other than the withholding of "remote" documents, plaintiffs assert that they do not know what they are moving to compel because they cannot tell what additional documents, if any, the City Defendants are withholding. Therefore, plaintiffs seek to compel production of each and every document they have requested, and a "verification" from the City Defendants that they have produced everything responsive to the Set One requests, or have identified all responsive documents which they are withholding.

A verification may be warranted and useful under certain conditions. See, e.g. Duenez v.

1  City of Manteca, 2013 WL 684654, at *9 (E.D. Cal. 2013) (Claire, M.J.) ("At the hearing on
2  plaintiffs' motion . . . counsel for defendants admitted that they have had past success in locating
3  documents responsive to other discovery requests propounded by plaintiffs after "double-
4  checking" their files. Accordingly, the City is directed to double-check its files with respect to
5  this request and to either produce any newly-found responsive documents or submit an amended
6  verification that documents responsive to this request do not exist.").

7  A compelled verification is not called for on the present circumstances of this case.
8  Defendants' counsel's signature on the discovery responses constitutes a "certification" that they
9  have provided all the relevant, non-privileged documents, except those specifically listed as being
10 withheld for one reason or another. See Fed. R. Civ. P. 26(g)(1). Plaintiffs are suspicious
11 because defendants have filed supplemental responses with additional documents produced with
12 each supplement. But this does not appear to be a case where defendants are withholding
13 documents, and then producing at a later time when they cannot hold out any longer. The
14 supplemental productions appear to be in response to various meet-and-confers, and other
15 negotiations.

### III.   SANCTIONS

17 Plaintiffs seek sanctions for defendants' withholding of documents older than 5 years old.
18 The Federal Rules of Civil Procedure provide for sanctions against the party resisting discovery if
19 the motion to compel is granted. Fed. R. Civ. P. 37(a)(5). However, the rules preclude sanctions
20 if there are circumstances making the award of sanctions unjust. Fed. R. Civ. P. 37(a)(5)(A)(iii).
21 Defendants' blanket refusal to provide any discovery over five years old, without apparent regard
22 for whether it is responsive or relevant, comes very close to being sanctionable conduct.
23 However, the court acknowledges that defendants could, possibly, consider that their cited cases
24 were a basis for limiting their responses to the five year period. Even though those cases do not,
25 in fact, justify the resistance, the court finds that sanctions at this point are not warranted.

### IV.  PROTECTIVE ORDER

27    A.    Legal Standard
28 As previously noted above, and in the court's prior ruling on defendants' earlier motion

for a protective order, the scope of discovery under Fed. R. Civ. P. 26(b) is broad. Under Fed. R. Civ. P. 26(c)(1), however, the court may, for good cause, nonetheless issue an order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense, including . . . specifying terms . . . for the disclosure or discovery . . . " Fed. R. Civ. P. 26(c)(1)(B). When a party seeks an order protecting from public disclosure information that has been produced in discovery but not filed in court, the Rule 26(c) good cause standard applies. Pintos v. Pacific Creditors Ass'n, 605 F.3d 665, 678 (9th Cir. 2010) (citing Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1180 (9th Cir. 2006)), cert. denied, 131 S. Ct. 900 (2011); Phillips ex rel. Estates of Byrd v. Gen'l Motors Corp., 307 F.3d 1206, 1210 (9th Cir. 2002). It is well established that absent a court order to the contrary, the fruits of pretrial discovery are presumptively public. San Jose Mercury News, Inc. v. United States Dist. Court, 187 F.3d 1096, 1103 (9th Cir. 1999).

To establish good cause, the party seeking a protective order in this context bears the burden of showing that specific prejudice or harm will result if no protective order is granted. Phillips, 307 F.3d at 1210-11. Broad and general allegations of harm do not satisfy the Rule 26(c) test. Beckman Industries, Inc. v. International Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992). For this reason, blanket protective orders are disfavored. See San Jose Mercury News, 187 F.3d at 1103.

B. Documents for Which a Protective Order Is Sought

Defendants seek a protective order to prevent the public dissemination of the following categories of produced documents:

Request For Production No. 1

> All documents of any and all internal affairs investigations of Defendants Lockie and/or Bratton in relation to the shooting of Parminder Singh Shergill.

Request For Production No. 2

> Any and all complaints by any persons relating to the actions of Defendants Lockie and/or Bratton, including any investigation performed in response to the complaints and results and recommendations.

Request for Production No. 3

Personnel files relating to each of the Defendants Lockie and Bratton, specifically including:
    a) Educational records;
    b) Employee performance appraisals;
    c) Training records;
    d) Employment applications;
    e) Letters of recommendation;
    f) Letters of commendation;
    g) Discipline records;
    h) Employee orientation records;
    i) Records of promotion; and
    j) Memoranda regarding any changes in assignment.

Request for Production No. 4

Peace Officer Standards and Training ("POST") examination and/or certifications, if any, for Defendants Lockie and Bratton.

Request for Production No. 5

Records of tests, performance, and qualification on each and every weapon which each of the Defendants Lockie and Bratton was qualified to employ.

Request for Production No. 12

Any and all records of training, testing and/or qualifications of Defendants Lockie and Bratton in the use of the following:
    a) Firearms, including handguns and beanbag rifles/shotguns;
    b) Chemical weapons such as mace, pepper spray, and teargas;
    c) Battons; and
    d) Physical holds and takedowns.

Request for Production No. 13

Any and all records relating to Defendants Lockie and Bratton received from either of their prior employers.

Request for Production No. 14

Any and all records of use of force reported by Defendants Lockie and Bratton.

Request for Production No. 15

Any and all records relating to injuries sustained, treatment received, medical evaluations, and psychiatric evaluations and reports relating to Defendants Lockie and Bratton.

Request for Production No. 16

> Any and all electronic mail or correspondence sent and/or received by you relating to any aspect of this action.

C. Analysis

The court does not address each category of documents separately, because defendants do not do so. Rather, defendants refer to all ten categories of documents as "private personnel information," and the "confidential personnel file." ECF No. 59 at 12. They make two blanket arguments covering all ten categories.

First:

> personnel records inherently reveal the inner workings and self-critical assessments of the Lodi Police Department. The City and the Department have an interest in limiting the broadcasting of the private personnel information as the incident reports have not been distributed.

ECF No. 59 at 11-12.[2]

Second:

> These officers have an undeniable interest in keeping this private information private. . . . All of the documents at issue here contain personal and confidential information and personnel information which is not available to the public pursuant to [Cal.] Penal Code section 832.7 and [Cal.] Evidence Code section 1043.

ECF No. 59 at 12.

These arguments are entirely non-specific. Defendants fail to state what information is contained in each category of information, apparently relying instead on the descriptions in the document requests themselves. But the court cannot tell what information private to the officer defendants is contained in the investigative reports, for example RFP # 1. They might well contain witness statements, among other things, that do not seem to be "private" or "personal" or "confidential" materials like the officers' social security numbers.

As another example, RFP # 4 asks for "Peace Officer Standards and Training ('POST')

---

[2] This court has previously ruled that "'[t]he Ninth Circuit does not recognize the privilege of "self-critical analysis."'" Cooley v. City of Vallejo, 2013 U.S. Dist. LEXIS 155175, at *23 (E.D. Cal. 2013) (Claire, M.J.).

13

examination and/or certifications, if any, for Defendants Lockie and Bratton." Defendants offer no explanation for how an examination, presumably given to officers other than the defendants, is "private," "personal" or "confidential" to these defendants. As for any certifications these defendants have received in relation to the POST, there is no explanation for why this needs to be kept secret.

In any event, this court has already rejected defendants' argument the last time defendants made it in this case. The last time around, defendants argued that they were entitled to a protective order of investigative files, and made similar broad arguments. See ECF No. 28. The court stated:

> Defendants cite to practically no legal authority in support of these arguments, and the Court finds that broad allegations of harm unsubstantiated by specific examples or articulated reasoning do not support a good cause showing. See In re Roman Catholic Archbishop of Portland in Or., 661 F.3d 417, 424 (9th Cir. 2011) (good cause for protective order requires showing of specific prejudice or harm), cert. denied, 132 S. Ct. 1867 (2012).

Kaur v. City of Lodi, 2014 WL 3956707, at *3 (E.D. Cal. 2014) (Claire, M.J.). Defendants' arguments are even broader now. For example, in the last round, defendants argued that "[k]eeping the names of the civilian witnesses from being released to the public serves a compelling law enforcement interest." ECF No. 28 at 10. Defendants also voiced concerns about tainting the jury pool. Id. There are no such specific arguments made here. Instead, defendants argue broadly that all investigative documents, all training records, all complaints, all certifications and exams, everything that fits into the officers' personnel files, should be kept secret, and disclosed only within the litigation.

Also, defendants seek an even broader protective order than before. Previously, they only sought to protect the internal investigative files. Now, they seek to protect everything in the personnel files, including records of the training on the firearms the defendants used to kill the decedent.

In addition, plaintiffs point to no specific harms that would result from public dissemination. This is a basic showing that must be made before a protective order will issue. Phillips, 307 F.3d at 1210-11 ("For good cause to exist, the party seeking protection bears the

1    burden of showing specific prejudice or harm will result if no protective order is granted").

2    Defendants cite many cases which they say indicate that it is routine to produce police

3    officer personnel records under a protective order. However, most of the cases cited involved

4    defendants who invoked federal privileges, which defendants here do not assert or even mention

5    in any of their discovery responses, nor show that they qualify for. See Carter v. City of

6    Carlsbad, 2011 U.S. Dist. LEXIS 14921 (S.D. Cal. 2011) (Major, M.J.) (defendants relied on a

7    federal privilege – the "official information privilege"); Cooley v. City of Vallejo, 2013 U.S. Dist.

8    LEXIS 155175, at * 26 (E.D. Cal. 2013) (Claire, M.J.) (overruling defendants' assertions of

9    federal privileges); Bernat v. City of California City, 2010 U.S. Dist. LEXIS 111538, at *26 (E.D.

10   Cal. October 12, 2010) (Thurston, M.J.) (defendants relied on a raft of federal privileges to argue

11   that police personnel files were privileged and should not be disclosed, and the court set out

12   federal tests to determine whether the federal privileges applied); Kelly v. City of San Jose, 114

13   F.R.D. 653, 666 (N.D. Cal. 1987) (Brazil, M.J.) (defendants relied on federal privileges).

14   Defendants here have never invoked a federal privilege, nor shown that they qualify for the

15   protection of the federal privilege, and so those cases are not helpful.

16   Pierce v. County of Sierra, 2013 WL 2421710 (E.D. Cal. 2013) (Claire, M.J.), was a

17   diversity case involving a car accident. The court determined that "California law governs

18   privilege matters in this diversity litigation." Id., at *2. Accordingly, when defendant police

19   officer invoked the "'police officer personnel file' privilege," the court applied California

20   privilege law. The court determined that there was good cause for the production of the personnel

21   records, but ordered the parties to submit a stipulated protective order, or a motion if they

22   couldn't agree on one. This all made sense in a case that was applying California law and

23   evidence rules. However in a case where there are "mixed state and federal claims," such as this

24   one, "federal law is controlling." Id., at *2. In Martinez v. City of Stockton, the court appears to

25   require a protective order under the authority of Cal. Evid. Code § 1045. 132 F.R.D. 677, 682

26   (E.D. Cal. 1990) (Hollows, M.J.) ("the statute allows as well for the issuance of a protective order

27   to limit the disclosure of otherwise confidential information"). This court has determined that

28   federal discovery rules govern here, not the state's evidence code. Accordingly, it respectfully

declines to follow <u>Martinez</u> to the degree it relies upon Section 1045.

Accordingly, defendants' request for a protective order will be denied. However, there are some things that plainly should not be subject to public disclosure, and which plaintiff agrees not to disseminate. In addition, defendants should have the opportunity to make the specific showings they have thus far failed to make.

## V. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel (ECF No. 50) is GRANTED, to the extent it seeks to compel the production of documents and further deposition testimony, and DENIED to the extent it seeks sanctions. Plaintiffs' request for a "verification" from defendants is DENIED. Defendants shall produce to plaintiffs all requested documents which defendants withheld solely on the basis that they are more than five years old. Defendants shall also permit the Officer Defendants to answer deposition questions calling for information more than five years old. Defendants may withhold specific documents or answers only if they are not responsive, or if defendants explain, in writing, why the specific responsive document or answer is not relevant to this lawsuit. The court will not accept the simple explanation that the document or answer is "remote," that it is "more than five years old," or similar explanations.

2. Defendants' motion for a protective order (ECF No. 58) is DENIED, without prejudice to renewal as to individual documents or specific information contained in individual documents. If defendants renew their motion, they are cautioned that they must show, "for each particular document" they seek to protect, "that specific prejudice or harm will result if no protective order is granted." <u>Foltz v. State Farm Mut. Auto. Ins. Co.</u>, 331 F.3d 1122, 1130-31 (9th Cir. 2003).

DATED: January 9, 2015

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE