UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUKHWINDER KAUR, individually and as the successor in interest for the Decedent PARMINDER SINGH SHERGILL; KULBINDER KAUR SOHOTA; SARABJIT SINGH SHERGILL,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF LODI; CITY OF LODI POLICE DEPARTMENT; MARK HELMS, in his individual capacity as the Chief of Police for the City of Lodi; SCOTT BRATTON, in his individual capacity as a City of Lodi Police Officer; ADAM LOCKIE, in his individual capacity as a City of Lodi Police Officer;<br><br>    Defendants.[*] | No. 2:14-cv-00828-GEB-AC<br><br>**ORDER DENYING ENTITY DEFENDANTS' MOTION AND GRANTING OFFICER DEFENDANTS' MOTION TO DISMISS PORTIONS OF THE SECOND AMENDED COMPLAINT** |

Defendants City of Lodi and City of Lodi Police Department (collectively, the "Entity Defendants")[1] seek

---

[*] The caption has been amended according to the automatic dismissal of Doe Defendants prescribed in the Status Order. (Status Order 3:2-4, ECF No. 24.)

[1] Defendant Chief Helms also joins in the Entity Defendants' motion. However, the ADA claim is not alleged against Chief Helms, and Plaintiff argues "all references by [the Entity Defendants] to [Chief] Helms in this . . . motion should be stricken since he cannot challenge the Monell claims. (Pl.'s Opp'n to Entity Defs.' Mot. 4:12, ECF No. 52.) Chief Helms does not respond to this argument in his reply brief. "Monell does not concern liability of individuals." Guillory v. Cnty. of Orange, 731 F.2d 1379, 1382 (9th Cir. 1984). Therefore, Defendant Helms cannot challenge the Monell claims, and he is not a proper movant to the Entity Defendants' dismissal motion.

1

dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6) of Plaintiff Sukhwinder Kaur's[2] Monell claims[3] based on the alleged (1) failure to enact adequate policies or practices to educate police officers on how to interact with mentally ill persons, and (2) deficient training and supervision of police officers' contact with mentally ill persons; and Plaintiff's claim alleged under Title II of the Americans with Disabilities Act ("ADA"), in which Plaintiff alleges the Entity Defendants failed to reasonably accommodate the Decedent Paraminder Singh Shergill's disability during his interaction with Defendants Scott Bratton and Adam Lockie (the "Officer Defendants").

The Officer Defendants separately seek dismissal of Plaintiff's Fourth Amendment provocation claim under Rule 12(b)(6).

Each dismissal motion is addressed separately below.

## I. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "A claim

---

[2] Each of the claims challenged in the referenced motions is "asserted by Plaintiff Sukhwinder Kaur, as successor in interest for the Decedent Parminder Singh Shergill." (SAC ¶¶ 74, 89, 94, ECF No. 47.)

[3] "Monell liability refers to the liability of [local governing bodies] . . . under 42 U.S.C. § 1983 where [an] official policy or custom causes a constitutional [injury], see Monell v. Dep't of Social Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)." Angle v. Alameda Cnty. Med. Ctr., No. C 07-250 SI, 2008 WL 413738, at *3 n.2 (N.D. Cal. Feb. 13, 2008).

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

"For purposes of a motion to dismiss, we accept all well-pleaded allegations of material fact as true and construe them in the light most favorable to the nonmoving party." Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012).

> [Further,] the court need not accept as true conclusory allegations, nor make unwarranted deductions or unreasonable inferences. But so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be [evaluated] on evidentiary grounds. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

In re Gilead Sciences Secs. Litig., 536 F.3d 1049, 1057 (9th Cir. 2008) (citation omitted) (quoting Twombly, 550 U.S. at 557).

## II. FACTUAL ALLEGATIONS

The following factual allegations in the Second Amended Complaint ("SAC") are relevant to the motions.

The Decedent Paraminder Singh Shergill ("Parminder") was a veteran receiving treatment for post-traumatic stress disorder and schizophrenia, which manifested as periodic "depression and agitation." (SAC 2:3-4, ¶ 5.) Paraminder "experienced the symptoms of his mental illness periodically since 2003. When manifesting symptoms of his mental illness,

3

P[araminder] would become depressed and anxious, but he never exhibited any violent tendencies or threatened violence to himself or others." (SAC ¶ 17.) "During his episodes of manifest mental illness, P[araminder] appeared not to comprehend what was being said to him or to be capable of responding appropriately." (Id.)

On January 25, 2014, Paraminder "manifested the symptoms of his mental illness." (SAC ¶ 20.) Parminder's family called 9-1-1 to request assistance in transporting him to the Veteran's Clinic to obtain treatment, telling the 9-1-1 operator that Parminder "was disabled, manifesting symptoms of his mental illness, acting 'crazy,' and needed to be transported" to the Clinic. (SAC 2:6-10, ¶¶ 21-22.)

When the Officer Defendants arrived, Parminder's family informed them that he had gone to the park. (SAC 2:10-13, ¶ 26.) The Officer Defendants told Parminder's family "that there was nothing they could do" in response to their request for assistance because Parminder was not a threat to himself or others, but stated that they would "try to talk with him" if they saw him. (SAC 2:13-15, ¶¶ 27-28.)

The Officer Defendants "saw P[araminder] while he was walking through the Park and attempted to . . . question him." (SAC ¶ 30.) When the Officer Defendants "initially confronted P[araminder], he walked away from the officers, crossed the street . . . , and began to walk . . . towards his Family Home. He did not respond to the [Officer Defendants'] verbal directions . . . and continued to walk despite [their] attempts to get him to stop by following him and yelling at him." (SAC ¶

4

32.)

> When under stress, Parminder, like other mentally ill persons, typically exhibited symptoms of his mental illness, conducting himself in delusional, irrational and non-compliant ways . . . .

(SAC ¶ 36.)

The Officer Defendants "had not been trained to understand, assess, and respond, without lethal force, to the types of irrational and non-compliant behavior which is typically exhibited by mentally ill persons . . . in their interactions with law enforcement." (SAC ¶ 33.) "This training, which is widely available and implemented throughout the nation," (SAC ¶ 33), includes instruction on:

> (1) maintaining physical distance from mentally ill subjects . . . (termed "comfort zones" or "boundaries"); (2) engaging in non-threatening communications . . . ; (3) managing the contact . . . by deliberately pulling back, and allowing the subject more time to respond, . . . ; (4) calling and consulting for advice or bringing to the scene persons trained in crisis intervention or others trained in how appropriately to deal with mentally ill persons . . . ; [and] (5) having at hand and using non-lethal weapons to control mentally ill subjects . . . , which will typically modify the irrational behavior of such subjects and bring about compliance, thereby rendering lethal force unnecessary.

(SAC ¶ 34.)

> Had [the Officer Defendants] been adequately trained to deal with persons suffering from mental illness . . . they would have realized that [Paraminder] would not respond to commands in a traditional way, that he would become upset by intrusive voices, and that he would become scared or paranoid when being followed by armed officers and ordered to follow commands and directions . . . . Had [they] received proper training they would have known there were multiple options

5

>                     available to them both prior to and after
>                     confronting P[araminder]. [The Officer
>                     Defendants] pursued none of these available
>                     options, due to their deficient training
>                     related to contacts and confrontations with
>                     mentally ill persons.

(SAC ¶ 37.) "Instead of using any of the techniques listed above, or others in which they should have been trained," the Officer Defendants "followed closely behind P[araminder] and repeatedly yelled at [him], demanding that [he] submit to their questioning." (SAC ¶ 38.) The Officer Defendants "drew their police-issued firearms and trained them on P[araminder], as he was facing away from the officers and continued to walk towards his Family Home." (Id.)

The Officer Defendants "continued to pursue P[arminder] in an aggressive manner, . . . by shouting commands, closely following, and brandishing firearms trained on Parminder." (SAC ¶ 39.) "Due to [the Officer Defendants' actions] Parminder became increasingly upset and afraid, exacerbating the symptoms of his mental illness. . . ." (Id.) When "approximately six house-lengths separate[d] P[aramidner] from his Family Home[,]" the Officer Defendants yelled "Stop!" (SAC ¶¶ 42-43.) As Parminder "turn[ed] around to face them," "he held his hands in the air and stated 'Don't Shoot!'" (SAC ¶¶ 43-44.) "Before P[araminder] could complete the 180° turn to face [the Officer Defendants], [they] both opened fire on P[araminder]." (SAC ¶ 45.)

### III. DISCUSSION

**A. The Entity Defendants' Dismissal Motion**

The Entity Defendants seek "dismiss[al of] Plaintiff's [ADA] claim[] . . . and the Monell claims related to inadequate

6

mental health training [and policies/procedures,]" arguing that "[a]fter two attempts to amend the complaint to put forth factual allegations that there was a [causal] connection between the shooting and [Paraminder's] mental illness, the [SAC] still falls short[; t]he [SAC] does not add any additional *facts* that connect the alleged wrongful conduct to [Paraminder's] mental health." (Entity Defs.' Mem. P.&A. Supp. Mot. Dismiss SAC 2:4-10, ECF No. 49-1.) Specifically, the Entity Defendants contend the SAC fails to state an ADA claim "because [Plaintiff] fails to [allege] how [Paraminder] was discriminated against by reason of his disability[; Plaintiff] fails to state how accommodating [Paraminder's] mental illness would have changed the Officer[s'] decision to shoot him." (Id. at 5:21-25 (citations omitted).) The Entity Defendants similarly argue Plaintiff has not alleged a Monell claim because the SAC "fail[s] to plead how the alleged deficiencies were the moving force behind the constitutional injury." (Id. at 7:6-9.)

Plaintiff rejoins that the Entity "Defendants construe Parminder's killing in a vacuum, focusing solely on the facts alleged to exist moments before Parminder was shot to death." (Pl.'s Opp'n to Entity Defs.' Mot. 8:12-13.) Plaintiff counters as follows concerning the Monell claims:

> [The Entity] Defendants ignore the context of the encounter, which has been exhaustively pled as a build-up from the time that the Officer Defendants encountered Parminder to the time that the shooting occurred. Plaintiff[] ha[s] pled that, had adequate policies or practices[ and/or training] been adopted by [the Entity] Defendants, the entire encounter between Parminder and the Officer Defendants[] would not have occurred in the manner it did, and Parminder would not

7

> have been shot and killed. [The Entity] Defendants refuse to face these allegations, merely labeling them "legal conclusions and speculations." [The Entity] Defendants are incorrect, because Plaintiff['s] allegations specifically explain how the deficient polic[ies/training] caused the harm identified, i.e., that the encounter between Parminder and the Officer Defendants would never have occurred or would have been defused without resort to the lethal force which resulted in Parminder's death.

(Id. at 9:12-22, see also id. at 10:25-28.) Plaintiff similarly responds concerning the ADA claim as follows:

> [The Entity] Defendants' argument demonstrates a failure to comprehend the scope of Plaintiff['s] ADA claim. Plaintiff[] are alleging that Parminder's ADA rights were violated not only by Officer Defendants' shooting, but also by every tactic employed by the Officer Defendants prior to the shooting, beginning when Officer Defendants chose to confront Parminder in the park.

(Id. at 14:28-15:5.)

"A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be **a moving force** behind a violation of constitutional rights." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (emphasis added) (citing Monell, 436 U.S. at 694). "For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury." Long v. Cnty. of L.A., 442 F.3d 1178, 1190 (9th Cir. 2006) (citation omitted).

To plead a prima facie case of disability discrimination under the ADA, a plaintiff must allege, *inter alia*, that "he was . . . discriminated against by the public

8

entity; and . . . such . . . discrimination was **by reason of [his] disability**." E.R.K. ex rel. R.K. v. Haw. Dep't of Educ., 728 F.3d 982, 992 (9th Cir. 2013) (emphasis added) (quoting McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004)). "[T]he phrase 'by reason of' [as used] in the [ADA] establishes a 'motivating factor' causal standard for liability . . . ." Martin v. Cal. Dep't of Veteran Affairs, 560 F.3d 1042, 1048 (9th Cir. 2009).

Here, Plaintiff alleges that when the Officer Defendants encountered Parminder, they confronted him and, as a result of his mental illness, Parminder was non-compliant. (SAC ¶¶ 36, 38.) Plaintiff further alleges the Officer Defendants "continued to pursue P[araminder] in an aggressive manner, . . . by shouting commands, closely following, and brandishing firearms trained on P[araminder[,]" and that if the Officer Defendants had been properly trained to appreciate the effect Parminder's mental illness had on his behavior, they would have responded differently. (SAC ¶¶ 33, 36, 39.) Specifically, Plaintiff alleges they would have "maintain[ed] physical distance [from him], . . . engag[ed] in non-threatening communications, . . . allow[ed] [him] more time to respond . . . , call[ed] and consult[ed] [with a person who is trained in how to] . . . deal with mentally ill persons without the use of lethal force . . . , [and] use[d] non-lethal weapons to control" Parminder. (SAC ¶¶ 33-34.)

The Officer Defendants have not shown that these allegations, together with all reasonable inferences that can be drawn therefrom, do not plausibly allege that the alleged inadequate policies/practices and training was a moving force

9

behind Plaintiff's alleged constitutional injuries, and that Paraminder's disability was a motivating factor in his alleged discriminatory treatment. Therefore, the Entity Defendants' dismissal motion is DENIED.

### B.  The Officer Defendants' Dismissal Motion

The Officer Defendants seek dismissal of Plaintiff's Fourth Amendment provocation claim, arguing, *inter alia*, "'[w]here an officer intentionally or recklessly provokes a violent confrontation, if the provocation is an *independent* Fourth Amendment violation, he may be liable for his [subsequent,] otherwise defensive use of deadly force[,]' Billington v. Smith (9th Cir. 2002) 292 F.3d 1177, 1189[,]" and "the [Second Amended Complaint ("SAC")] fails to state facts sufficient to constitute an *independent* Fourth Amendment [v]iolation because it fails to [allege] the Decedent was seized prior to the shooting." (Officer Defs.' Mem. P.&A. Supp. Mot. Dismiss SAC 8:5-9, 13:5-8; ECF No. 48-1 (second use of brackets in original) (emphasis added).) The Officer Defendants contend:

> A person is not seized for purposes of the Fourth Amendment unless, by means of physical force or show of authority, his freedom of movement is restrained. [Absent] physical force, a subject must submit to an assertion of police authority in order for there to be a seizure. Without compliance, there is no seizure. . . .
>
> . . . .
>
> Here, the pleaded facts are such that no independent Fourth Amendment violation occurred prior to [the Officer Defendants'] shooting of [Paraminder] because no seizure occurred.
>
> After receiving a 9-1-1 call from the Decedent's family . . . , [the Officer

10

> Defendants] located [Paraminder and] . . . attempted to detain and question [him, but he] did not comply. . . .
>
> At this point in the chronological sequence of events there are no allegations that [Paraminder] submitted to the [Officer Defendants'] authority . . . .
>
> The SAC goes on to allege that [Paraminder] did not respond to the [Officer Defendants'] verbal directions . . . and continued to walk despite [their] attempts to get him to stop by following him and yelling at him. . . .
>
> [The Officer Defendants] then continued to pursue [Paraminder] by shouting commands, closely following, and brandishing firearms trained on the Decedent. . . . [T]his does not constitute a seizure because [Paraminder] continued to walk away from the officers with no indication that he was submitting to their authority.
>
> Finally, as [Paraminder] was approximately six house lengths from the family home, [the Officer Defendants] yelled at him to stop from approximately twenty feet away. While simultaneously putting his hands in the air, stating "don't shoot" and beginning to turn around, [Paraminder] was shot and killed by [the Officer Defendants].
>
> . . . . [T]his act is pleaded as occurring contemporaneously with the shooting. In fact, [Paraminder] was shot before he could complete the 180° turn to face [the Defendant] Officers . . . .
>
> . . . .
>
> Because no pre-shooting seizure is pleaded, the . . . [p]rovocation claim should be dismissed.

(Id. at 8:13-13:21 (quotation marks, citations, and alteration omitted).)

Plaintiff rejoins that the "Officer Defendants [are] renew[ing an earlier] motion to dismiss [Plaintiff's provocation claim], in violation of the 'law of the case,'" by "ask[ing] this

11

1  Court . . . to consider their arguments which it previously and
2  explicitly rejected." (Pl.'s. Opp'n to Officer Defs.' Mot. 3:25-
3  28, ECF No. 51.) Plaintiff contends "[t]his Court previously
4  rejected Officer Defendants' motion to dismiss . . . finding that
5  Plaintiff[] had properly stated a[] . . . provocation claim."
6  (Id. at 4:23-24.) Plaintiff further counters that even "[i]f the
7  Court is inclined to consider Officer Defendants' motion to
8  dismiss Plaintiff['s] [provocation] claim[,] . . . the motion is
9  . . . without merit." (Id. at 6:17-18.) Plaintiff argues:

> In this case, [the] SAC alleges that Officer Defendants' pre-shooting conduct directed at Paraminder whom they knew was suffering from mental illness, which included bullying tactics in the form of confronting, harassing, stalking, and pointing firearms at Paraminder as he walked away from the Officer Defendants towards his home, constituted an independent Fourth Amendment violation provoking a response from Paraminder which precipitated the Officer Defendants' use of deadly force.

17 (Id. at 7:21-26 (emphasis omitted).)
18          The Officer Defendants reply, *inter alia*, that the law
19 of the case doctrine does not apply because "Defendants' initial
20 motion to dismiss Plaintiff['s] provocation claim did not raise
21 the issue of whether [Paraminder] was seized prior to the
22 shooting . . . . Defendants raise th[is] issue[] now in light of
23 the new factual allegations in the [SAC]." (Officer Defs.' Reply
24 1:20-25, ECF No. 53.) The Officer Defendants argue: "the new
25 factual allegation[] that the [Decedent] was . . . shot '[b]efore
26 [he] could complete the 180° turn to face [the Officer
27 Defendants] . . . g[a]ve rise to new arguments that have never
28 been considered by the court in this case." (Id. at 2:19-25.)

12

"The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs. Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case." United States v. Lummi Nation, 763 F.3d 1180, 1184 (9th Cir. 2014) (internal quotation marks and citations omitted). "The 'law of the case [doctrine] acts as a bar only when the issue in question was actually considered and decided [previously].'" United Steelworkers of Am. v. Retirement Income Plan for Hourly-Rated Employees of Asarco, Inc., 512 F.3d 555, 564 (9th Cir. 2008) (quoting United States v. Cote, 51 F.3d 178, 181 (9th Cir. 1995)). Here, the Court "ha[s] not previously decided" whether Paraminder was seized prior to the shooting since the Officer Defendants did not raise that argument as a basis for their motion to dismiss the original Complaint. United States v. Lepp, 446 F. App'x 44, 46 (9th Cir. 2011) (citing Cote, 51 F.3d at 181). Therefore, the Officer Defendants' current dismissal motion is not precluded by the law of the case doctrine, and the Court considers its merits.

"[W]here an officer intentionally or recklessly provokes a violent confrontation, *if the provocation is an independent Fourth Amendment violation*, he may be held liable for his [subsequent,] otherwise defensive use of deadly force." Billington, 292 F.3d at 1189 (emphasis added). "In such a case, the officer's *initial* unconstitutional provocation . . . would proximately cause the *subsequent* application of deadly force." Id. at 1191 (emphasis added).

In deciding whether Plaintiffs have alleged an *independent* Fourth Amendment violation as required to plead a provocation claim, the Court must determine whether Paraminder was seized prior to the Officer Defendants' use of deadly force. Cf. United States v. McClendon, 713 F.3d 1211, 1215 (9th Cir. 2013) (emphasis added) (reviewing a district court's denial of a suppression motion, stating "[i]n deciding whether evidence is the product of an unlawful seizure, we first determine whether the defendant was seized at the time the handgun was discarded").

> The general rule is that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. This determination is a necessary, but not a sufficient, condition for seizure. In addition, some form of touching or submission is also required.

Id. (internal quotation marks and citations omitted). "A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." Brendlin v. Cal., 551 U.S. 249, 254 (2007); see, e.g., United States v. McClendon, 713 F.3d 1211, 1215 (9th Cir. 2013) (holding an individual was not seized "when [police] officers drew their guns and told him he was under arrest" "where . . . [he] walk[ed] away from and refuse[d] to comply with the commands of [the] officers").

Here, Plaintiff has not alleged facts, which plausibly state Paraminder was seized prior to the Officer Defendants' use of deadly force. Therefore, the Officer Defendants' motion to dismiss Plaintiff's Fourth Amendment provocation claim (Second

Claim) is GRANTED. However, Plaintiff is granted fourteen (14) days leave from the date on which this order is filed to file a Third Amended Complaint addressing the referenced deficiencies in the Fourth Amendment provocation claim.

Dated:  June 16, 2015

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge

15