1

2                 UNITED STATES DISTRICT COURT

3               EASTERN DISTRICT OF CALIFORNIA

4

5   SUKHWINDER KAUR, individually      No. 2:14-cv-00828-GEB-AC
    and as the successor in
6   interest for the Decedent
    PARMINDER SINGH SHERGILL;
7   KULBINDER KAUR SOHOTA;             **AMENDED ORDER** DENYING ENTITY**
    SARABJIT SINGH SHERGILL,           **DEFENDANTS' MOTION AND GRANTING**
8                                      **OFFICER DEFENDANTS' MOTION TO**
                   Plaintiffs,         **DISMISS PORTIONS OF THE SECOND**
9                                      **AMENDED COMPLAINT**

10       v.

11  CITY OF LODI; CITY OF LODI
    POLICE DEPARTMENT; MARK
12  HELMS, in his individual
    capacity as the Chief of
13  Police for the City of Lodi;
    SCOTT BRATTON, in his
14  individual capacity as a City
    of Lodi Police Officer; ADAM
15  LOCKIE, in his individual
    capacity as a City of Lodi
16  Police Officer;

17                 Defendants.[*]

18       Defendants  City  of  Lodi  and  City  of  Lodi  Police

19  Department   (collectively,   the   "Entity   Defendants")[1]   seek

20  _____

21  [*]    The caption has been amended according to the automatic dismissal of Doe
    Defendants prescribed in the Status Order. (Status Order 3:2-4, ECF No. 24.)

22  [**]    The June 17, 2015 Order, (ECF No. 86), has been amended as follows: The
    word "Officer" on page 9, line 25 of that order is replaced by the word
23  "Entity."

24  [1]    Defendant Chief Helms also joins in the Entity Defendants' motion.
    However, the ADA claim is not alleged against Chief Helms, and Plaintiff
25  argues "all references by [the Entity Defendants] to [Chief] Helms in
    this . . . motion should be stricken since he cannot challenge the Monell
26  claims. (Pl.'s Opp'n to Entity Defs.' Mot. 4:12, ECF No. 52.) Chief Helms does
    not respond to this argument in his reply brief. "Monell does not concern
27  liability of individuals." Guillory v. Cnty. of Orange, 731 F.2d 1379, 1382
    (9th Cir. 1984). Therefore, Defendant Helms cannot challenge the Monell
28  claims, and he is not a proper movant to the Entity Defendants' dismissal
    motion.

                                 1

1    dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6)

2    of Plaintiff Sukhwinder Kaur's[2] <u>Monell</u> claims[3] based on the

3    alleged (1) failure to enact adequate policies or practices to

4    educate police officers on how to interact with mentally ill

5    persons, and (2) deficient training and supervision of police

6    officers' contact with mentally ill persons; and Plaintiff's

7    claim alleged under Title II of the Americans with Disabilities

8    Act ("ADA"), in which Plaintiff alleges the Entity Defendants

9    failed to reasonably accommodate the Decedent Paraminder Singh

10   Shergill's disability during his interaction with Defendants

11   Scott Bratton and Adam Lockie (the "Officer Defendants").

12        The Officer Defendants separately seek dismissal of

13   Plaintiff's Fourth Amendment provocation claim under Rule

14   12(b)(6).

15        Each dismissal motion is addressed separately below.

## I. LEGAL STANDARD

17        "To survive a motion to dismiss, a complaint must

18   contain sufficient factual matter, accepted as true, to state a

19   claim to relief that is plausible on its face." <u>Caviness v.</u>

20   <u>Horizon Cmty. Learning Ctr., Inc.</u>, 590 F.3d 806, 812 (9th Cir.

21   2010) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)). "A claim

---

[2]    Each of the claims challenged in the referenced motions is "asserted by Plaintiff Sukhwinder Kaur, as successor in interest for the Decedent Parminder Singh Shergill." (SAC ¶¶ 74, 89, 94, ECF No. 47.)

[3]    "<u>Monell</u> liability refers to the liability of [local governing bodies]. . . . under 42 U.S.C. § 1983 where [an] official policy or custom causes a constitutional [injury], <u>see</u> <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)." <u>Angle v. Alameda Cnty. Med. Ctr.</u>, No. C 07-250 SI, 2008 WL 413738, at *3 n.2 (N.D. Cal. Feb. 13, 2008).

1  has facial plausibility when the plaintiff pleads factual content

2  that allows the court to draw the reasonable inference that the

3  defendant is liable for the misconduct alleged." Iqbal, 556 U.S.

4  at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556

5  (2007)).

6  "For purposes of a motion to dismiss, we accept all

7  well-pleaded allegations of material fact as true and construe

8  them in the light most favorable to the nonmoving party."

9  Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th

10  Cir. 2012).

11  [Further,] the court need not accept as true
    conclusory allegations, nor make unwarranted
12  deductions or unreasonable inferences. But so
    long as the plaintiff alleges facts to
13  support a theory that is not facially
    implausible, the court's skepticism is best
14  reserved for later stages of the proceedings
    when the plaintiff's case can be [evaluated]
15  on evidentiary grounds. "[A] well-pleaded
    complaint may proceed even if it strikes a
16  savvy judge that actual proof of those facts
    is improbable, and that a recovery is very
17  remote and unlikely."

18  In re Gilead Sciences Secs. Litig., 536 F.3d 1049, 1057 (9th Cir.

19  2008) (citation omitted) (quoting Twombly, 550 U.S. at 557).

20  **II. FACTUAL ALLEGATIONS**

21  The following factual allegations in the Second Amended

22  Complaint ("SAC") are relevant to the motions.

23  The Decedent Paraminder Singh Shergill ("Parminder")

24  was a veteran receiving treatment for post-traumatic stress

25  disorder and schizophrenia, which manifested as periodic

26  "depression and agitation." (SAC 2:3-4, ¶ 5.) Paraminder

27  "experienced the symptoms of his mental illness periodically

28  since 2003. When manifesting symptoms of his mental illness,

1  P[araminder] would become depressed and anxious, but he never

2  exhibited any violent tendencies or threatened violence to

3  himself or others." (SAC ¶ 17.) "During his episodes of manifest

4  mental illness, P[araminder] appeared not to comprehend what was

5  being said to him or to be capable of responding appropriately."

6  (Id.)

7          On January 25, 2014, Paraminder "manifested the

8  symptoms of his mental illness." (SAC ¶ 20.) Parminder's family

9  called 9-1-1 to request assistance in transporting him to the

10  Veteran's Clinic to obtain treatment, telling the 9-1-1 operator

11  that Parminder "was disabled, manifesting symptoms of his mental

12  illness, acting 'crazy,' and needed to be transported" to the

13  Clinic. (SAC 2:6-10, ¶¶ 21-22.)

14          When the Officer Defendants arrived, Parminder's family

15  informed them that he had gone to the park. (SAC 2:10-13, ¶ 26.)

16  The Officer Defendants told Parminder's family "that there was

17  nothing they could do" in response to their request for

18  assistance because Parminder was not a threat to himself or

19  others, but stated that they would "try to talk with him" if they

20  saw him. (SAC 2:13-15, ¶¶ 27-28.)

21          The Officer Defendants "saw P[araminder] while he was

22  walking through the Park and attempted to . . . question him."

23  (SAC ¶ 30.) When the Officer Defendants "initially confronted

24  P[araminder], he walked away from the officers, crossed the

25  street . . . , and began to walk . . .towards his Family Home. He

26  did not respond to the [Officer Defendants'] verbal

27  directions . . . and continued to walk despite [their] attempts

28  to get him to stop by following him and yelling at him." (SAC ¶

4

32.)

> When under stress, Parminder, like other
> mentally ill persons, typically exhibited
> symptoms of his mental illness, conducting
> himself in delusional, irrational and non-
> compliant ways . . . .

(SAC ¶ 36.)

The Officer Defendants "had not been trained to understand, assess, and respond, without lethal force, to the types of irrational and non-compliant behavior which is typically exhibited by mentally ill persons . . . in their interactions with law enforcement." (SAC ¶ 33.) "This training, which is widely available and implemented throughout the nation," (SAC ¶ 33), includes instruction on:

> (1) maintaining physical distance from
> mentally ill subjects . . . (termed
> "comfort zones" or "boundaries"); (2)
> engaging in non-threatening
> communications . . . ; (3) managing the
> contact . . . by deliberately pulling back,
> and allowing the subject more time to
> respond, . . . ; (4) calling and consulting
> for advice or bringing to the scene persons
> trained in crisis intervention or others
> trained in how appropriately to deal with
> mentally ill persons . . . ; [and] (5) having
> at hand and using non-lethal weapons to
> control mentally ill subjects . . . , which
> will typically modify the irrational behavior
> of such subjects and bring about compliance,
> thereby rendering lethal force unnecessary.

(SAC ¶ 34.)

> Had [the Officer Defendants] been adequately
> trained to deal with persons suffering from
> mental illness . . . they would have realized
> that [Paraminder] would not respond to
> commands in a traditional way, that he would
> become upset by intrusive voices, and that he
> would become scared or paranoid when being
> followed by armed officers and ordered to
> follow commands and directions . . . . Had
> [they] received proper training they would
> have known there were multiple options

> available to them both prior to and after
> confronting P[araminder]. [The Officer
> Defendants] pursued none of these available
> options, due to their deficient training
> related to contacts and confrontations with
> mentally ill persons.

(SAC ¶ 37.) "Instead of using any of the techniques listed above, or others in which they should have been trained," the Officer Defendants "followed closely behind P[araminder] and repeatedly yelled at [him], demanding that [he] submit to their questioning." (SAC ¶ 38.) The Officer Defendants "drew their police-issued firearms and trained them on P[araminder], as he was facing away from the officers and continued to walk towards his Family Home." (Id.)

The Officer Defendants "continued to pursue P[arminder] in an aggressive manner, . . . by shouting commands, closely following, and brandishing firearms trained on Parminder." (SAC ¶ 39.) "Due to [the Officer Defendants' actions] Parminder became increasingly upset and afraid, exacerbating the symptoms of his mental illness. . . ." (Id.) When "approximately six house-lengths separate[d] P[aramidner] from his Family Home[,]" the Officer Defendants yelled "Stop!" (SAC ¶¶ 42-43.) As Parminder "turn[ed] around to face them," "he held his hands in the air and stated 'Don't Shoot!'" (SAC ¶¶ 43-44.) "Before P[araminder] could complete the 180° turn to face [the Officer Defendants], [they] both opened fire on P[araminder]." (SAC ¶ 45.)

### III. DISCUSSION

#### A.   The Entity Defendants' Dismissal Motion

The Entity Defendants seek "dismiss[al of] Plaintiff's [ADA] claim[] . . . and the Monell claims related to inadequate

1   mental health training [and policies/procedures,]" arguing that

2   "[a]fter two attempts to amend the complaint to put forth factual

3   allegations that there was a [causal] connection between the

4   shooting and [Paraminder's] mental illness, the [SAC] still falls

5   short[; t]he [SAC] does not add any additional *facts* that connect

6   the alleged wrongful conduct to [Paraminder's] mental health."

7   (Entity Defs.' Mem. P.&A. Supp. Mot. Dismiss SAC 2:4-10, ECF No.

8   49-1.) Specifically, the Entity Defendants contend the SAC fails

9   to state an ADA claim "because [Plaintiff] fails to [allege] how

10  [Paraminder] was discriminated against by reason of his

11  disability[; Plaintiff] fails to state how accommodating

12  [Paraminder's] mental illness would have changed the Officer[s'] 

13  decision to shoot him." (Id. at 5:21-25 (citations omitted).) The

14  Entity Defendants similarly argue Plaintiff has not alleged a

15  Monell claim because the SAC "fail[s] to plead how the alleged

16  deficiencies were the moving force behind the constitutional

17  injury." (Id. at 7:6-9.)

18       Plaintiff rejoins that the Entity "Defendants construe

19  Parminder's killing in a vacuum, focusing solely on the facts

20  alleged to exist moments before Parminder was shot to death."

21  (Pl.'s Opp'n to Entity Defs.' Mot. 8:12-13.) Plaintiff counters

22  as follows concerning the Monell claims:

23       [The Entity] Defendants ignore the context of
         the encounter, which has been exhaustively
24       pled as a build-up from the time that the
         Officer Defendants encountered Parminder to
25       the time that the shooting occurred.
         Plaintiff[] ha[s] pled that, had adequate
26       policies or practices[ and/or training] been
         adopted by [the Entity] Defendants, the
27       entire encounter between Parminder and the
         Officer Defendants[] would not have occurred
28       in the manner it did, and Parminder would not

                                    7

have been shot and killed. [The Entity] Defendants refuse to face these allegations, merely labeling them "legal conclusions and speculations." [The Entity] Defendants are incorrect, because Plaintiff['s] allegations specifically explain how the deficient polic[ies/training] caused the harm identified, i.e., that the encounter between Parminder and the Officer Defendants would never have occurred or would have been defused without resort to the lethal force which resulted in Parminder's death.

(Id. at 9:12-22, see also id. at 10:25-28.) Plaintiff similarly responds concerning the ADA claim as follows:

[The Entity] Defendants' argument demonstrates a failure to comprehend the scope of Plaintiff['s] ADA claim. Plaintiff[] are alleging that Parminder's ADA rights were violated not only by Officer Defendants' shooting, but also by every tactic employed by the Officer Defendants prior to the shooting, beginning when Officer Defendants chose to confront Parminder in the park.

(Id. at 14:28-15:5.)

"A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be **a moving force** behind a violation of constitutional rights." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (emphasis added) (citing Monell, 436 U.S. at 694). "For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury." Long v. Cnty. of L.A., 442 F.3d 1178, 1190 (9th Cir. 2006) (citation omitted).

To plead a prima facie case of disability discrimination under the ADA, a plaintiff must allege, *inter alia*, that "he was . . . discriminated against by the public

8

entity; and . . . such . . . discrimination was **by reason of [his] disability**." <u>E.R.K. ex rel. R.K. v. Haw. Dep't of Educ.</u>, 728 F.3d 982, 992 (9th Cir. 2013) (emphasis added) (quoting <u>McGary v. City of Portland</u>, 386 F.3d 1259, 1265 (9th Cir. 2004)). "[T]he phrase 'by reason of' [as used] in the [ADA] establishes a 'motivating factor' causal standard for liability . . . ." <u>Martin v. Cal. Dep't of Veteran Affairs</u>, 560 F.3d 1042, 1048 (9th Cir. 2009).

Here, Plaintiff alleges that when the Officer Defendants encountered Parminder, they confronted him and, as a result of his mental illness, Parminder was non-compliant. (SAC ¶¶ 36, 38.) Plaintiff further alleges the Officer Defendants "continued to pursue P[araminder] in an aggressive manner, . . . by shouting commands, closely following, and brandishing firearms trained on P[araminder[,]" and that if the Officer Defendants had been properly trained to appreciate the effect Parminder's mental illness had on his behavior, they would have responded differently. (SAC ¶¶ 33, 36, 39.) Specifically, Plaintiff alleges they would have "maintain[ed] physical distance [from him], . . . engag[ed] in non-threatening communications, . . . allow[ed] [him] more time to respond . . . , call[ed] and consult[ed] [with a person who is trained in how to] . . . deal with mentally ill persons without the use of lethal force . . . , [and] use[d] non-lethal weapons to control" Parminder. (SAC ¶¶ 33-34.)

The Entity Defendants have not shown that these allegations, together with all reasonable inferences that can be drawn therefrom, do not plausibly allege that the alleged inadequate policies/practices and training was a moving force

1   behind Plaintiff's alleged constitutional injuries, and that

2   Paraminder's disability was a motivating factor in his alleged

3   discriminatory treatment. Therefore, the Entity Defendants'

4   dismissal motion is DENIED.

5       **B.   The Officer Defendants' Dismissal Motion**

6           The Officer Defendants seek dismissal of Plaintiff's

7   Fourth Amendment provocation claim, arguing, *inter alia*,

8   "'[w]here an officer intentionally or recklessly provokes a

9   violent confrontation, if the provocation is an *independent*

10  Fourth Amendment violation, he may be liable for his

11  [subsequent,] otherwise defensive use of deadly force[,]'

12  Billington v. Smith (9th Cir. 2002) 292 F.3d 1177, 1189[,]" and

13  "the [Second Amended Complaint ("SAC")] fails to state facts

14  sufficient to constitute an *independent* Fourth Amendment

15  [v]iolation because it fails to [allege] the Decedent was seized

16  prior to the shooting." (Officer Defs.' Mem. P.&A. Supp. Mot.

17  Dismiss SAC 8:5-9, 13:5-8; ECF No. 48-1 (second use of brackets

18  in original) (emphasis added).) The Officer Defendants contend:

19          A person is not seized for purposes of
20      the Fourth Amendment unless, by means of
        physical force or show of authority, his
21      freedom of movement is restrained. [Absent]
        physical force, a subject must submit to an
22      assertion of police authority in order for
        there to be a seizure. Without compliance,
23      there is no seizure. . . .

24      . . . .

25          Here, the pleaded facts are such that no
        independent Fourth Amendment violation
26      occurred prior to [the Officer Defendants']
        shooting of [Paraminder] because no seizure
27      occurred.

28          After receiving a 9-1-1 call from the
        Decedent's family . . . , [the Officer

                                10

1        Defendants] located [Paraminder and] . . .
         attempted to detain and question [him, but
2        he] did not comply. . . .

3            At this point in the chronological
         sequence of events there are no allegations
4        that [Paraminder] submitted to the [Officer
         Defendants'] authority . . . .
5
             The SAC goes on to allege that
6        [Paraminder] did not respond to the [Officer
         Defendants'] verbal directions . . . and
7        continued to walk despite [their] attempts to
         get him to stop by following him and yelling
8        at him. . . .

9            [The Officer Defendants] then continued
         to pursue [Paraminder] by shouting commands,
10       closely following, and brandishing firearms
         trained on the Decedent. . . . [T]his does
11       not constitute a seizure because [Paraminder]
         continued to walk away from the officers with
12       no indication that he was submitting to their
         authority.
13
             Finally, as [Paraminder] was
14       approximately six house lengths from the
         family home, [the Officer Defendants] yelled
15       at him to stop from approximately twenty feet
         away. While simultaneously putting his hands
16       in the air, stating "don't shoot" and
         beginning to turn around, [Paraminder] was
17       shot and killed by [the Officer Defendants].

18           . . . . [T]his act is pleaded as occurring
         contemporaneously with the shooting. In fact,
19       [Paraminder] was shot before he could
         complete the 180° turn to face [the
20       Defendant] Officers . . . .

21           . . . .

22           Because no pre-shooting seizure is
         pleaded, the . . . [p]rovocation claim should
23       be dismissed.

24  (Id. at 8:13-13:21 (quotation marks, citations, and alteration

25  omitted).)

26           Plaintiff rejoins that the "Officer Defendants [are]

27  renew[ing an earlier] motion to dismiss [Plaintiff's provocation

28  claim], in violation of the 'law of the case,'" by "ask[ing] this

                                    11

Court . . . to consider their arguments which it previously and explicitly rejected." (Pl.'s. Opp'n to Officer Defs.' Mot. 3:25-28, ECF No. 51.) Plaintiff contends "[t]his Court previously rejected Officer Defendants' motion to dismiss . . . finding that Plaintiff[] had properly stated a[] . . . provocation claim." (Id. at 4:23-24.) Plaintiff further counters that even "[i]f the Court is inclined to consider Officer Defendants' motion to dismiss Plaintiff['s] [provocation] claim[,] . . . the motion is . . . without merit." (Id. at 6:17-18.) Plaintiff argues:

> In this case, [the] SAC alleges that Officer Defendants' pre-shooting conduct directed at Paraminder whom they knew was suffering from mental illness, which included bullying tactics in the form of confronting, harassing, stalking, and pointing firearms at Paraminder as he walked away from the Officer Defendants towards his home, constituted an independent Fourth Amendment violation provoking a response from Paraminder which precipitated the Officer Defendants' use of deadly force.

(Id. at 7:21-26 (emphasis omitted).)

The Officer Defendants reply, *inter alia*, that the law of the case doctrine does not apply because "Defendants' initial motion to dismiss Plaintiff['s] provocation claim did not raise the issue of whether [Paraminder] was seized prior to the shooting . . . . Defendants raise th[is] issue[] now in light of the new factual allegations in the [SAC]." (Officer Defs.' Reply 1:20-25, ECF No. 53.) The Officer Defendants argue: "the new factual allegation[] that the [Decedent] was . . . shot '[b]efore [he] could complete the 180° turn to face [the Officer Defendants] . . . g[a]ve rise to new arguments that have never been considered by the court in this case." (Id. at 2:19-25.)

12

1    "The law of the case doctrine is a judicial invention

2   designed to aid in the efficient operation of court affairs.

3   Under the doctrine, a court is generally precluded from

4   reconsidering an issue previously decided by the same court, or a

5   higher court in the identical case." United States v. Lummi

6   Nation, 763 F.3d 1180, 1184 (9th Cir. 2014) (internal quotation

7   marks and citations omitted). "The 'law of the case [doctrine]

8   acts as a bar only when the issue in question was actually

9   considered and decided [previously].'" United Steelworkers of Am.

10   v. Retirement Income Plan for Hourly-Rated Employees of Asarco,

11   Inc., 512 F.3d 555, 564 (9th Cir. 2008) (quoting United States v.

12   Cote, 51 F.3d 178, 181 (9th Cir. 1995)). Here, the Court "ha[s]

13   not previously decided" whether Paraminder was seized prior to

14   the shooting since the Officer Defendants did not raise that

15   argument as a basis for their motion to dismiss the original

16   Complaint. United States v. Lepp, 446 F. App'x 44, 46 (9th Cir.

17   2011) (citing Cote, 51 F.3d at 181). Therefore, the Officer

18   Defendants' current dismissal motion is not precluded by the law

19   of the case doctrine, and the Court considers its merits.

20    "[W]here an officer intentionally or recklessly

21   provokes a violent confrontation, *if the provocation is an*

22   *independent Fourth Amendment violation*, he may be held liable for

23   his [subsequent,] otherwise defensive use of deadly force."

24   Billington, 292 F.3d at 1189 (emphasis added). "In such a case,

25   the officer's *initial* unconstitutional provocation . . . would

26   proximately cause the *subsequent* application of deadly force."

27   Id. at 1191 (emphasis added).

28

13

1    In deciding whether Plaintiffs have alleged an

2   *independent* Fourth Amendment violation as required to plead a

3   provocation claim, the Court must determine whether Paraminder

4   was seized prior to the Officer Defendants' use of deadly force.

5   Cf. United States v. McClendon, 713 F.3d 1211, 1215 (9th Cir.

6   2013) (emphasis added) (reviewing a district court's denial of a

7   suppression motion, stating "[i]n deciding whether evidence is

8   the product of an unlawful seizure, we first determine whether

9   the defendant was seized at the time the handgun was discarded").

10          The general rule is that a person has
11          been 'seized' within the meaning of the
            Fourth Amendment only if, in view of all of
12          the circumstances surrounding the incident, a
            reasonable person would have believed that he
13          was not free to leave. This determination is
            a necessary, but not a sufficient, condition
14          for seizure. In addition, some form of
            touching or submission is also required.

15  Id. (internal quotation marks and citations omitted). "A police

16  officer may make a seizure by a show of authority and without the

17  use of physical force, but there is no seizure without actual

18  submission; otherwise, there is at most an attempted seizure, so

19  far as the Fourth Amendment is concerned." Brendlin v. Cal., 551

20  U.S. 249, 254 (2007); see, e.g., United States v. McClendon, 713

21  F.3d 1211, 1215 (9th Cir. 2013) (holding an individual was not

22  seized "when [police] officers drew their guns and told him he

23  was under arrest" "where . . . [he] walk[ed] away from and

24  refuse[d] to comply with the commands of [the] officers").

25          Here, Plaintiff has not alleged facts, which plausibly

26  state Paraminder was seized prior to the Officer Defendants' use

27  of deadly force. Therefore, the Officer Defendants' motion to

28  dismiss Plaintiff's Fourth Amendment provocation claim (Second

14

Claim) is GRANTED. However, Plaintiff is granted fourteen (14) days leave from the date on which this order is filed to file a Third Amended Complaint addressing the referenced deficiencies in the Fourth Amendment provocation claim.

Dated:  June 18, 2015

GARLAND E. BURRELL, JR.
Senior United States District Judge

15