1  Mark E. Merin (State Bar No. 043849)
   Paul H. Masuhara (State Bar No. 289805)
2  **LAW OFFICE OF MARK E. MERIN**
   1010 F Street, Suite 300
3  Sacramento, California 95814
   Telephone:    (916) 443-6911
4  Facsimile:    (916) 447-8336
   E-Mail:       mark@markmerin.com
5                paul@markmerin.com

6  Attorneys for Plaintiffs
   SUKHWINDER KAUR, KULBINDER KAUR
7  SOHOTA, and SARABJIT SINGH SHERGILL

8              UNITED STATES DISTRICT COURT

9             EASTERN DISTRICT OF CALIFORNIA

10                SACRAMENTO DIVISION

11 SUKHWINDER KAUR, et al.              Case No. 2:14-cv-00828-GEB-AC

12          Plaintiffs,                 **PLAINTIFFS' MEMORANDUM OF POINTS
                                        AND AUTHORITIES IN REPLY TO
13 vs.                                  DEFENDANTS' OPPOSITION TO
                                        MOTION TO STRIKE EXPERT REPORT
14 CITY OF LODI, et al.,                AND EXCLUDE PROPOSED EXPERT
                                        TESTIMONY OF MASSAD F. AYOOB**
15          Defendants.

16                                      DATE:        November 30, 2015
                                        TIME:        9:00 a.m.
17                                      COURTROOM:   10 (13th Floor)
                                        JUDGE:       Hon. Garland E. Burrell, Jr.
18

19

20

21

22

23

24

25

26

27

28

Plaintiff Sukhwinder Kaur, Kulbinder Kaur Sohota, and Sarabjit Singh Shergill (collectively, "Plaintiffs") file the following brief in reply to Defendant City of Lodi, City of Lodi Police Department, Mark Helms, Miles Scott Bratton, and Adam Lockie's (collectively, "Defendants") opposition, ECF No. 123 ("Opp'n"), to Plaintiffs' motion to strike and exclude Massad F. Ayoob, ECF No. 110 ("Motion").[1]

## I.   ARGUMENT IN REPLY

### A.   DEFENDANTS' BRIEF IN OPPOSITION EXCEEDS PAGE LIMITATIONS.

"The Eastern District of California's Standing Order provides in pertinent part: 'Unless prior leave of court seven days before the filing date is obtained, all briefs or memoranda in civil cases shall not exceed 25 pages… Reply briefs filed by moving parties shall not exceed 10 pages. Briefs that exceed this limitation or sought to be filed after the required time will NOT BE CONSIDERED.'" *Atkinson v. County of Tulare*, 790 F. Supp. 2d 1188, 1214 (E.D. Cal. 2011). Defendants filed a <u>38</u>-<u>page</u> opposition brief without having first received leave of Court to file an oversize brief. Plaintiffs are unable sufficiently to reply to the oversized opposition because of Defendants' non-compliance with the page limitation requirements, and the 10-page reply brief limitation.

### B.   THE EFFECT OF STRIKING AN EXPERT'S RULE 26(a)(2)(B) REPORT IS PRECLUSION OF THE DESIGNATED EXPERT'S TESTIMONY, BECAUSE THE REPORT SERVES AS THE BASIS FOR THE PROPOSED TESTIMONY.

Initially, Defendants' argument that the instant motion must be limited solely to the adequacy of an expert's report pursuant to Fed. R. Civ. P. 26(a)(2)(B), as opposed to the admissibility of the proposed expert testimony pursuant to Fed. R. Evid. 702, Opp'n at 6:5-8:2, fails to recognize that disclosure of an expert report littered with inadmissible expert opinion is grounds for striking an expert report and, thus, precluding the expert's proposed testimony. *See, e.g.*, *United States CFTC v. Moncada*, 2014 U.S. Dist. LEXIS 88884 (S.D.N.Y. June 30, 2014) (striking expert report; "[w]hen you take out all the objectionable portions of [the expert]'s testimony, there is simply not much left to it. It is, therefore, stricken in its entirety."); *Porges v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 26267, *16 (N.D. Ill. Mar. 15, 2011) ("the Court finds that [the] expert report and proposed testimony are not relevant"); *Westbrook v. Dollar Rent A Car, Inc.*, 2007 U.S. Dist. LEXIS 102680, *24 (D. Nev. Aug. 27, 2007)

---

[1] All references to pagination of specific documents pertain to those provided at the top of the documents via the CM/ECF court docketing system, as opposed to the page number at the bottom of the document.

1

(striking "the vast majority of the opinions [the expert] expresses in her report" because they "would not be helpful to the trier of fact").

The circumstances in *Gregory v. Oliver*, 2002 U.S. Dist. LEXIS 24730 (N.D. Ill. Dec. 27, 2002), are instructive. There, the plaintiff filed a motion to strike and exclude proposed trial testimony of the defendants' police liability expert, based upon the inadmissibility of proposed testimony in the expert's report. *Id*. at *1. The court noted "its gatekeeper responsibility" in striking the expert's report and proposed testimony because of its "total reliance on -- and his extensive repetition of -- every aspect of defendants' version of the hotly disputed events that gave rise to [the plaintiff]'s acknowledged injury." *Id*. at *8. The court rejected the defendants' argument that the plaintiff had the ability to depose the expert "to flush out what [the expert] was obligated to disclose" in his expert report and denied a request that the expert be permitted to submit a supplemental expert report to cure the deficiencies. *Id*. at *7.

"The purpose of the [expert's] report is to 'set forth the substance of the direct examination.'" *Jenkins v. Bartlett*, 487 F.3d 482, 487 (7th Cir. 2007) (quoting Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note). Accordingly, opinions inadequately disclosed in an expert's report results in the "inability of the expert to modify, or to go outside of the boundaries of, the opinions that were expressly voiced in his or her Rule 26(a)(2)(B) report." *Gregory*, 2002 U.S. Dist. LEXIS 24730 at *5. Therefore, if an expert report offers only inadmissible expert testimony, the report is deficient and the proposed testimony is also deficient, as a result. The striking of an expert report, on the grounds that the expert offers inadmissible opinion, would necessarily preclude the proposed expert testimony.

## C. THE FORMAT OF THE EXPERT'S REPORT FAILS TO COMPLY WITH THE EXPRESS REQUIREMENTS OF RULE 26(a)(2)(B) BECAUSE IT ONLY ANSWERS HYPOTHETICAL, LEGALLY-IMPROPER, AND OBJECTIONABLE QUESTIONS.

Defendants argue that the question-and-answer format of Mr. Ayoob's expert report, ECF No. 110-1 at 14-31 ("Report"), is not improper, because "[t]here is no per se rule against the question and answer format." Opp'n at 10:9-11:2. However, Fed. R. Civ. P. 26(a)(2)(B)(i) requires a "complete statement of all opinions the witness will express…" This is not provided in Ayoob's Report—instead, the Report provides "Yes" or "No" answers to hypothetical and legally-improper "questions" which Mr. Ayoob *posed to himself*. Merely answering "[a]nticipated question[s]" of Defendants' counsel which call for inadmissible testimony is <u>not</u> the same as providing "complete statement of all opinions the witness

2

will express…"

The advisory committee's note for Fed. R. Civ. P. 26 expresses the rationale for requiring expert reports as the elimination of unfair surprise to the opposing party and the conservation of resources. *United States ex rel. O'Connell v. Chapman University*, 245 F.R.D. 652, 653 (C.D. Cal. 2007). But the Report concededly *only* provides answers to "questions [Mr. Ayoob] expect[s] to be asked upon direct examination by [Defendants'] counsel…" Report at 5. The Report's one-sided and incomplete statement of opinion does not eliminate surprise to Plaintiffs nor does it conserve resources, because it fails to provide a "complete statement of all opinions the witness will express…" Fed. R. Civ. P. 26(a)(2)(B)(i).

As a result, Plaintiffs would be required to conduct the costly deposition of Mr. Ayoob, in order to "flush out" the inadequacies in his Report and learn his opinions and the basis for them—despite the fact that he was "obligated to disclose" this information in his Report. *See Gregory*, 2002 U.S. Dist. LEXIS 24730 at *7; *see also Cotton v. City of Eureka*, 860 F. Supp. 2d 999, 1023 (N.D. Cal. 2012) ("The mere fact that Plaintiffs had the opportunity to depose [the expert] before trial is of little moment.").

**D.   THE EXPERT'S REPORT IS INADEQUATELY DETAILED BECAUSE IT FAILS TO DISCLOSE "HOW" AND "WHY" THE EXPERT REACHED THE CONCLUSIONS AND OPINIONS PROVIDED.**

Fed. R. Civ. P. 26(a)(2)(B) requires disclosure of "'how' and 'why' the expert reached the conclusions and opinions to be expressed" and "'what' the expert saw, heard, considered, read, thought about or relied upon in reaching the conclusions and opinions to be expressed." *Reed v. Binder*, 165 F.R.D. 424, 429 n. 5 & 6 (D.N.J. 1996). "The test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *Id*.

Defendants' opposition brief discusses the specific factual circumstances of certain cases cited mostly for legal propositions in Plaintiffs' moving papers and is irrelevant, as a result. *See* Opp'n at 8:3-10:5. Additionally, in an apparent attempt to compensate for the deficiencies in Mr. Ayoob's Report, Defendants expand upon and bolster Mr. Ayoob's "opinions" in their briefing. For example:

- "the general public has been exposed to so many TV and movie depictions of shootings in which a single shot instantly neutralizes its intended target." Opp'n at 14:27-15:1.

- Listing as qualifications periods of time Mr. Ayoob was employed as a police officer, Opp'n at

3

17:1-4, even where the Report explicitly "ascribe[s] no particular expertise to that element of [the expert's] background," Report at 1.

- "This opinion is merely an attempt to explain why Mr. Shergill remained upright through as many gunshots as he did and to dispel any lay notions that fourteen shots is per se gratuitous." Opp'n at 19:6-7.

- "Mr. Ayoob references John Farnam's 1970s published research (well known to nearly all in this area) showing the average person could fire five shots per second with a semiautomatic pistol which had a short trigger pull." Opp'n at 20:22-24.

- "Mr. Ayoob is one of the world's foremost experts on firearms." Opp'n at 21:16-18.

- "Massad Ayoob is one of the world's foremost experts on use-of-force and police defensive tactics." Opp'n at 26:14-15.

- "he is simply opining on the potential lethality of a knife, and that using a firearm in defense is an appropriate response for anyone who does not wish to be killed by a knife wielding aggressor." Opp'n at 34:7-9.

- "It should be noted that the topic of 'witness dynamics' is something to which he devotes an hour or more in most of his basic classes when he teaches threat management (cited in his curriculum viate [*sic*])." Opp'n at 38:5-7.

- "He simply opines that, based on his experience with law enforcement officers, their weight is not per se determinative of their effectiveness, or that they are improperly supervised." Opp'n at 40:1-3.

Attempts to expand upon and "save" Mr. Ayoob's deficient proposed testimony, like those identified above, are improper. *See Clark v. Hill*, 2013 U.S. Dist. LEXIS 175216, **12-13 (N.D. Ala. Dec. 11, 2013) (rejecting defendant's "attempting to remedy some of the expert report deficiencies" in opposition to motion to prohibit expert). Furthermore, the fact that Defendants have expanded upon and provided explanation of some of the contents of Mr. Ayoob's Report directly conflicts with their simultaneous assertion that it is adequate, self-explanatory, and admissible.

As demonstrated by Mr. Ayoob's Report and reinforced by Defendants' opposition briefing, the only explanation for opinions rendered is the boilerplate assertion of Mr. Ayoob's purported knowledge

4

and experience. However, a simple statement that an expert has "experience" in a particular field, alone, does *not* provide the basis for offering any and every expert opinion, as Defendants assert. *See, e.g.,* Opp'n at 21:25-26 ("extensive experience"); 23:1-3 ("valuable experience and training"); 23:12-13 ("extensive experience"); 25:26-27 ("extensive experience and training"); 27:23-24 (same); 28:6-7 (same); 28:22-24 ("This opinion is based entirely on Mr. Ayoob's experience"); 29:5-6 ("extensive experience and training"); 29:20-22 ("extensive use of force and defense tactics experience"); 32:14-16 ("extensive experience and training"), etc. "If the witness is relying solely or primarily on experience, then the witness must explain <u>how</u> that experience leads to the conclusion reached, <u>why</u> that experience is a sufficient basis for the opinion, and <u>how</u> that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note (underscores added); *see also M.H. v. County of Alameda*, 2015 U.S. Dist. LEXIS 12081, *10 (N.D. Cal. Feb. 1, 2015) (excluding expert opinion inadequately disclosed in expert report, based on expert's unsupported opinions based on experience).

## E. THE EXPERT REPORT PROVIDES ONLY INADMISSIBLE OPINIONS WHICH THE EXPERT IS UNQUALIFIED TO RENDER, WHICH ARE IRRELEVANT TO THE INSTANT MATTER, AND/OR WHICH ARE UNRELIABLY FORMULATED.

### 1. Unqualified Expert Opinions

Defendants argue that Plaintiffs' objections to the admissibility of Mr. Ayoob's opinions are "premature" and should be reserved for a Fed. R. Evid. 104 hearing "or upon cross examination of the expert at trial." Opp'n at 11:3-19. However, "[t]he district court is not required to hold a Rule 104(a) hearing, but rather must merely make a determination as to the proposed expert's qualifications." *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1124 (9th Cir. 1994). Additionally, as noted above, district courts may employ its "gatekeeping" function in any manner it sees fit, including striking inadequately disclosed expert opinions. *See, e.g., Gregory*, 2002 U.S. Dist. LEXIS 24730 at *8.[2]

Defendants have designated Mr. Ayoob as a "use of force expert," and Mr. Ayoob's Report only anticipates his being "proffered as an expert in dynamics of violent encounters, elements of pistol shooting such as potential speed of fire, relative lethality of edged weapons and how they are employed,

---

[2] As observed in Plaintiffs' moving papers, the author of the *Gregory* opinion, Judge Shadur, was one of two principle drafters of the current versions of Federal Rules of Evidence 701, 702, and 703. 2002 U.S. Dist. LEXIS 24730 at *5 n. 1 & *10 n. 2.

homicide investigation protocols, and standards of care in the use of firearms in self-defense and defense of others by law enforcement officers." Report at 1.

This says nothing of the various areas in which Mr. Ayoob has proffered unqualified and inadmissible expert opinion, as set out in Plaintiffs' moving papers. "[B]ecause a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." *Nimely v. City of New York*, 414 F.3d 381, 399 n. 13 (2d Cir. 2005); *see also Giles v. Rhodes*, 2000 U.S. Dist. LEXIS 13980, **59-64 (S.D.N.Y. Sept. 26, 2000) (use of force expert unqualified to offer opinion regarding "causation of physical injuries."); *Brothers v. Akshar*, 383 Fed. Appx. 47, 49 (2d Cir. 2010) (use of force expert unqualified to offer opinion regarding "forensic crime scene reconstruction or forensic pathology."); *Lee v. City of Richmond*, 2014 U.S. Dist. LEXIS 139366, **15-16 (E.D. Va. Sept. 30, 2014) (use of force expert "unqualified to provide an expert opinion on ballistics or bullet trajectories" and "reconstructing the scene of the shooting."); *Quagliarello v. Dewees*, 802 F. Supp. 2d 620, 626 (E.D. Pa. 2011) ("a police liability expert should be precluded from testifying about an officer's state of mind because the expert is not qualified in that field."); *United States v. Slough*, 51 F. Supp. 3d 1, 6 (D.D.C. 2014) ("[Expert] has no medical or scientific training in memory; his expertise is in self-defense and the use of deadly force."); *Scheckells v. Goord*, 423 F. Supp. 2d 342, 348 (S.D.N.Y. 2006) ("Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for.").[3]

## 2. Expert Opinions Will Not "Assist The Trier Of Fact"

As noted in Plaintiffs' moving papers, the "opinions" expressed in Mr. Ayoob's Report will not "assist the trier of fact," as required by Fed. R. Evid. 702, because they go beyond the scope of that which is permissible by attempting to usurp either the role of the trial judge in instructing the jury as to the applicable law, or the role of the jury in applying that law to the facts before it. *United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999). Such improper expert testimony "by definition does not aid the

---

[3] Defendants correctly observe that certain older and unpublished dispositions and orders of the Ninth Circuit are unciteable. Opp'n at 18:1-2 & 29:13-15. "Unpublished dispositions and orders of [the Ninth Circuit] issued before January 1, 2007 may not be cited to the courts of this circuit…" 9th Cir. R. 36-3(c). Accordingly, Plaintiffs request that the Court disregard their citation to *Smith v. City of San Bernardino*, 81 Fed. Appx. 130, 131 (9th Cir. 2003) and *Rodriguez v. City of Los Angeles*, 1991 U.S. App. LEXIS 413, *3 (9th Cir. 1991) provided in their moving papers.

jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." *Nimely*, 414 F.3d at 397 (quotations & citation omitted).

Accordingly, there are qualifications and limitations imposed on expert opinion, specifically applicable to police liability experts. For example, "*assuming that [the expert] is properly qualified and that proper disclosures of his opinions have been made*," which Plaintiffs dispute,

> [the expert] *would not* be allowed to opine on a *factual* matter on which the jurors are entirely capable of making a determination—such as what force was used by the officers, … nor would he be allowed to base his opinion on what he believes the correct version of the facts to be… On the other hand, if he is properly qualified, [the expert] would be allowed to explain the *kind* of force applied, … and even whether or not [the officers] applied that [force] properly, as well as whether using that [force] was appropriate in the circumstances presented, under recognized standards and practices... Also, [the expert] could permissibly testify as to what routine and acceptable [] practices [in similar contexts] *are*, based on his training and expertise [in the field]... [The expert] would be allowed to respond to *abstract* or *hypothetical* questions by opining that the force described was or was not reasonable in the circumstances described in the question, and would even be permitted to opine as to whether he *personally* believed that the force used against [the plaintiff] was reasonable under the circumstances, but he would *not* be allowed to opine that the use of force satisfied the *legal* standard of "reasonableness."

*Peters v. Woodbury County*, 979 F. Supp. 2d 901, 924-25 (N.D. Iowa 2013).

With these principles as a reference, it is clear that Mr. Ayoob's Report is composed of only inadmissible and improper opinions. For example, assuming the Report's "questions" are "opinions":

- Opinion #1: "[A]nything other than police brutality or excessive force [] could account for the officers shooting the decedent as many as fourteen times." Report at 5-7.

- Opinion #2: The officers "could…have fired those fourteen shots" "[p]robably in less than three second, most likely in two and a half seconds or less." Report at 7-8.

- Opinion #3: "[T]he officer were [not] negligent in not carrying TASERs at the time of this incident." Report at 8-10.

- Opinion #4: "[T]he officers [should not] have used the other less-than-lethal weapons, which were available to them, against Mr. Shergill before resorting to their service pistols." Report at 10-13.

- Opinion #5: "If the officers had not fired, … Shergill [could] have stabbed one of them once he began moving toward them" "[w]ithin three seconds, perhaps considerably less." Report at 13-14.

- Opinion #6: "If the assailant 'only had a knife,' and the defender has a gun, [it is not] at all unfair

7

1  or inappropriate to use a gun against the knife-armed individual." Report at 14-15.

2  • Opinion #7: "[T]here [would not] be any reason to believe that the officer shot an unarmed man,

3    and then planted a 'throwdown' knife on Mr. Shergill as he lay dying or dead." Report at 15.

4  • Opinion #8: "[E]yewitnesses [would possibility, but not necessarily,] be lying if they said they

5    didn't see Parminder Shergill raise is [*sic*] arm, or didn't see a knife, or didn't see him advance

6    upon the officers." Report at 15-16.

7  • Opinion #9: "[Where] it has been implied that both of the involved officers could be seen as

8    overweight, and that this is somehow an indication of incompetence on their part, and a lack of

9    supervision by their agency[, it is irrelevant, for multiple reasons.]" Report at 16-17.

10 • Opinion #10: "Mr. Shergill's prior bad acts [did not] influence any of the opinions [Mr. Ayoob]

11   [has] expressed in [his] report, or expect[s] to testify to at trial." "Those facts are not foundational

12   to any of [Mr. Ayoob's] opinions, but are merely confirmatory of them." Report at 17-18.

13   These are opinions "on a *factual* matter on which the jurors are entirely capable of making a

14 determination—such as what force was used by the officers," and improperly provides Mr. Ayoob's

15 opinion "on what he believes the correct version of the facts to be…" *Peters*, 979 F. Supp. 2d at 924-25.

16 Therefore, Mr. Ayoob "would not be allowed to testify" to these opinions. *Id*. A search of the paragraphs

17 that follow each "opinion" in the Report for actual opinions would be in vain, and yields only argument,

18 total reliance on Officer Defendants' version of disputed factual issues, and irrelevant observations.

19   Arguably, Opinion #6 is presented in the form of a response to an "*abstract* or *hypothetical*"

20 question, which is generally permissible. *See id*. However, the opinion itself is an improper legal

21 conclusion—*i.e.*, "[i]f the assailant 'only had a knife,' and the defender has a gun, [it is not] at all unfair

22 or inappropriate to use a gun against the knife-armed individual"—which is expressly an inaccurate

23 statement of the law, where "the mere possession of a knife by the decedent, without more, is not enough

24 to conclusively render the use of deadly force 'reasonable.'" *Duenez v. City of Manteca*, 2013 U.S. Dist.

25 LEXIS 179927, *34 n. 23 (E.D. Cal. Dec. 20, 2013) (citing *Glenn v. Washington County*, 673 F.3d 864,

26 872 (9th Cir. 2011)).

27   Again, the decision in *Gregory*, 2002 U.S. Dist. LEXIS 24730, authored by the judge that co-

28 drafted the current version of Fed. R. Evid. 702, is instructive. There, like Mr. Ayoob's Report in the

instant matter, the police liability expert framed his expert opinion "in terms of his total reliance on -- and his extensive repetition of -- every aspect of defendants' version of the hotly disputed events that gave rise to [plaintiff]'s acknowledged injury." *Id*. at *8. In striking the expert's report and precluding his proposed expert testimony, the court noted:

> It will of course be for the jury as factfinders to listen to the testimony of those who were involved in the fracas -- [plaintiff] and the defendant officers -- and to decide whose version is credible. That decisional process would be distorted seriously if a person such as [the expert] were to take the stand, cloaked in a mantle of expertise, and to reinforce the officers' scenario in the manner that he has set out in his report. . . To put the matter in Fed. R. Evid. 702 terms,[fn] [the expert]'s testimony would not "assist the trier of fact to understand the evidence or to determine a fact in issue," but would instead impermissibly load the dice by voicing the witnesses' predetermination of the facts in issue.

*Id*. at **8-10 (footnote omitted).

"This case does not present the classic battle of experts, in which each side proffers testimony that states opinions that draw differing conclusions from the same set of facts that have been placed before the jury." *Id*. at *10. Rather, the issues in this case revolve almost entirely around disputes of fact. Mr. Ayoob's Report, advancing opinions related only to disputed facts he has been paid to emphasize, would not "assist the trier of fact to understand the evidence or to determine a fact in issue" in this matter.

## F.    SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1) ARE APPROPRIATE.

"Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). "Defendants contend that the frivolous issues Plaintiffs have with minor details of Mr. Ayoob's report are harmless," Opp'n at 40:25-26, but elaborate no further.

Plaintiffs interpret Defendants' acknowledgment of "minor details" being "harmless" as a concession that at least *something* in Mr. Ayoob's Report is non-compliant. In any event, merely stating that some unidentified "minor details" are harmless does not make it so. Plaintiffs have provided extensive authority in their moving papers confirming that inadequate disclosure of expert opinions is prejudicial and, where the discovery deadlines looms, not "substantially justified" or "harmless." *See, e.g., Sanchez v. State of California*, 2015 U.S. Dist. LEXIS 60801, **23-24 (E.D. Cal. May 7, 2015) ("Allowing these witnesses to testify at this time would be prejudicial to [Plaintiffs] as they have not been informed as to what the witness will testify."). "The last thing a party or its counsel wants in a hotly

9

contested lawsuit is to make last-minute preparations and decisions on the run." *Ollier v. Sweetwater Union High School District*, 768 F.3d 843, 863 (9th Cir. 2014).  Defendants have addressed none of that authority, nor have they stated how or why their actions were "substantially justified" or "harmless."

### G.   DEFENDANTS' REQUESTS FOR SANCTIONS IS NON-COMPLIANT & MERITLESS.

Defendants request sanctions against Plaintiffs from this Court, in connection with the instant motion, through two different modes: 28 U.S.C. § 1927 and Fed. R. Civ. P. 11. Opp'n at 41:16-42:6.

Initially, Plaintiffs note that Defendants' request for Rule 11 sanctions fails due to their failure to comply with the very Rule under which they seek sanctions. The plain text of the Rule provides a "safe harbor" procedure requiring presentation of an opportunity to comply with the Rule by the party seeking sanctions, at least 21 days prior to filing a motion. *See* Fed. R. Civ. P. 11(c)(2); *see also Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) (the purpose of Rule 11's "safe harbor" provision is to allow counsel to withdraw claims in order to "protect[] himself totally from sanctions"). Defendants have failed to comply with this Rule and its procedural requirements, precluding their entitlement to sanctions under this Rule. Notably, Plaintiffs have already had occasion to highlight some of the violations of Rules committed by Defendants that, unfortunately, litter the docket in this action. *See* ECF No. 109 at 24:2-23.

As to Defendants' unsupported accusations that the instant motion is "vexatious, reckless, and frivolous" and "reeks of boilerplate and recklessness," Opp'n at 42:7-27, Plaintiffs will not reduce themselves to the level of non-civility and unprofessional name-calling to which Defendants have descended. *See also* ECF No. 114 at 12:12-17 (accusing Plaintiffs of "retaliation," failing to "spen[d] a modicum of reflection" before filing a motion, using a motion which was subsequently granted by the Court as "a vessel to waste the parties' time and money," and "gamesmanship and tactical maneuvering"). Therefore, because Plaintiffs have done nothing wrong and have no reason to defend themselves against baseless and inappropriate accusations submitted by Defendants to this Court in pleading form, Plaintiffs submit that their moving papers containing their cited authority, and the supporting documents submitted therewith, reflect the meritorious nature of the instant motion.

### II.   <u>CONCLUSION</u>

For all of the reasons provided in Plaintiffs' moving papers and herein, Plaintiffs respectfully request that the Court strike the expert report and precluded the proposed testimony of Mr. Ayoob.

10

Dated: November 23, 2015

Respectfully Submitted,

By: _____
    Mark E. Merin
    Paul H. Masuhara
    **LAW OFFICE OF MARK E. MERIN**
    1010 F Street, Suite 300
    Sacramento, California 95814
    Telephone:    (916) 443-6911
    Facsimile:    (916) 447-8336

    Attorneys for Plaintiffs
    SUKHWINDER KAUR, KULBINDER KAUR
    SOHOTA, and SARABJIT SINGH SHERGILL

11